In re Fred and Annette
CURREY, Debtors.

ITANO FARMS, INC., Plaintiff,

v.

Fred CURREY, Defendant.

Bankruptcy No. 91–02735.
Adv. No. 91–6262.

United States Bankruptcy Court,
D. Idaho.

June 3, 1993.

Richard B. Eismann, Nampa, ID, for plaintiff.

Laura, Burri, Boise, ID, for defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### I. *Background and Facts.*

This matter is before the Court after trial in this adversary proceeding. The

facts were set forth in some detail in the Court's previous Memorandum of Decision concerning Defendant's Motion for Summary Judgment entered on December 4, 1992, *In re Currey*, 92 I.B.C.R. 220, but because those facts are now largely stipulated, they may be briefly stated again here.

In April, 1991, Defendant was convicted in state court under Idaho Code § 18–3106(b) of issuing insufficient fund checks in connection with his purchase of cattle from Plaintiff. As part of its sentencing order, the state court directed Defendant to pay restitution to Plaintiff in the sum of $50,250, the face amount of the checks. Plaintiff was at the time a debtor in a Chapter 12 case, and so the restitution payments were forwarded to its Chapter 12 Trustee. In May, 1991, Defendant made a $14,321 payment to the Chapter 12 Trustee, and has been making monthly payments to the Trustee since that time. In addition, in March, 1991, the Chapter 12 Trustee had received a $15,000 payment from a bond posted by Defendant with the Washington Department of Agriculture on account of the bad checks.

Defendant filed for Chapter 7 relief on August 19, 1991. The Chapter 7 Trustee of Defendant's bankruptcy estate filed a preference action against the Chapter 12 Trustee to recover the payments made by Defendant in May and the two months thereafter. *See* 11 U.S.C. § 547(b); *In re Currey*, 92 I.B.C.R. 171. The Chapter 7 Trustee eventually received $8,534.61 from the Chapter 12 Trustee on the preference claim.[1]

Plaintiff commenced this adversary proceeding against Defendant in the Chapter 7 case to obtain a declaration that the debt from Defendant to Plaintiff on account of the insufficient funds checks is excepted from discharge under Sections 523(a)(2), (a)(4), and (a)(7) of the Bankruptcy Code. Plaintiff also requests entry of a money judgment for the balance due after credit for payments made by Defendant, but specifically including the amounts paid back

over to Defendant's Chapter 7 Trustee by the Chapter 12 Trustee.

Defendant concedes that the debt is non-dischargeable under Section 523(a)(7) as a restitution obligation, and stipulates that a judgment declaring such may be entered. However, he objects to the entry of a money judgment, and also seeks credit against the balance due to Plaintiff for the amount of the preference payments recovered by the Chapter 7 Trustee. Defendant's various arguments shall be discussed separately below.

## II. *Jurisdiction of the Court to Enter a Money Judgment.*

Defendant argues that while this Court may render a final judgment on the issue of the dischargeability of Defendant's obligation to Plaintiff, that absent Defendant's consent, it can only make recommendations to the District Court as to the issue of the validity and amount of the underlying indebtedness. In other words, Defendant urges that Plaintiff's request for entry of a money judgment is a non-core proceeding in which the Court cannot enter a final judgment. While there is case law to support Defendant's position, *see In re McLaren*, 983 F.2d 56, 59–60 (6th Cir.1993), for several reasons this Court rejects Defendant's arguments.

First of all, in this case, Defendant has at least arguably consented to the jurisdiction of this Court to grant the relief requested by Plaintiff. Defendant's Answer filed in this action admits the allegations of Plaintiff's Complaint that this Court has jurisdiction over the claims made pursuant to 28 U.S.C. § 157. *See* Answer, ¶ 2. No objection to the entry of a final judgment can be found in that Answer. If Defendant had concerns about the authority of this Court to finally adjudicate the issues raised by Plaintiff, there is certainly no indication of that opposition in the pleadings.

■ In addition, Defendant has impliedly consented to the entry of a final judgment

---

1. The parties have stipulated that no further sums will be paid by the Chapter 12 Trustee to the Chapter 7 Trustee on the preference claim, although they do not specify why.

in this action. The Ninth Circuit Court of Appeals, has held that a party

"should not ..., after fully litigating its case in bankruptcy court, be permitted to object to that court's jurisdiction. We hold that appellant's failure to object to the bankruptcy court's jurisdiction constitutes consent to the jurisdiction."

*In re Daniels–Head & Assoc.*, 819 F.2d 914, 919 (9th Cir.1987).

In this action, the first time that Defendant questioned this Court's authority to enter final judgment was in connection with an unsuccessful motion to abstain filed on April 16, 1993, less than one month prior to trial. Defendant had not raised this argument in connection with its motion for summary judgment, although extensive briefing and argument was submitted to the Court. Neither was the issue raised when Defendant attempted, once again unsuccessfully, to appeal this Court's order denying the motion for summary judgment to the Bankruptcy Appellate Panel. *See* Defendant's Motion for Leave to Appeal, at 2–3. The circumstances of this action justify a finding that Defendant impliedly consented to this Court's jurisdiction to enter a final, appealable judgment on all issues raised.

▮ More to the point, however, the Court finds that no consent to entry of a final judgment is required in this context since the action falls squarely within the Court's jurisdiction under 28 U.S.C. § 157(b)(1) authorizing "[b]ankruptcy judges [to] hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11 ... and [to] enter appropriate orders and judgments."

Section 157(b)(2) sets forth examples of the proceedings over which the Bankruptcy Court exercises final, or "core" jurisdiction. "Section 157(b)(2) does not set categorical limits on the jurisdiction of bankruptcy courts over core proceedings, but rather merely enumerates examples of proceedings falling within a bankruptcy court's core proceeding jurisdiction." *In re Mankin*, 823 F.2d 1296, 1300 (9th Cir.1987). In particular, Section 157(b)(2)(I) provides that "determinations as to the dischargeability

of particular debts ..." are core proceedings. "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Core jurisdiction is broad and Section 157(b)(2) was intended by Congress to be an expansion of the bankruptcy court's jurisdiction to its constitutional limits. *Mankin*, 823 F.2d at 1301. This Court has *exclusive* jurisdiction to decide whether debts should be excepted from discharge under Sections 523(a)(2) and (a)(4) of the Bankruptcy Code. 11 U.S.C. § 523(c)(1).

It is the better reasoned view, in the opinion of this Court, that the determination of the validity and amount of the debt owed from a debtor to creditor is an inextricable component to the Court's determination of the dischargeability of the indebtedness, at least in many cases. It is difficult to see how the Court could determine, as here, whether a debt is excepted from discharge without also determining whether any debt in fact exists in the first instance, and the amount of that debt. This is especially true where, as in this action, the basis for the exception to discharge is alleged to be the debtor's fraudulent conduct.

A frustrating scenario would be presented if the rule were otherwise. Effectively, this Court could not enter a final judgment as to the dischargeability issues until the liability on the debt were established by some other tribunal. This would be a particularly unacceptable result in cases such as this where liability is admitted, but there is a contest over the amount of the debt. As can be seen, it would be curious to submit the issue of whether Defendant is entitled to a credit for the payments made but recovered as preferences from Plaintiff, a defense involving strictly issues of bankruptcy law, to a non-bankruptcy court for resolution. The Rules dictate that an action to determine dischargeability be commenced promptly. F.R.B.P. 4003(c). This policy would be upset by a ruling that the Court must postpone its disposition of such actions until the state or Federal district court settles the amount of the debt.

A separate basis exists for the Court's conclusion that it has core jurisdiction in this context. Section 157(b)(2)(B) allows entry of a final judgment by this Court as to the "allowance or disallowance of claims against the estate ... but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims...." Indisputably, had the issue of the amount due from Defendant to Plaintiff arisen by virtue of an objection by an interested party to Plaintiff's claim in the Defendant's bankruptcy case, the above statutory provision would allow the Court to enter final judgment. There is simply no defensible reasoning that would suggest the result should be different when the issue comes to the Court in some other setting in the same bankruptcy proceeding.[2] Where Congress intended that this Court not finally adjudicate creditor's claims (i.e. personal injury and wrongful death claims) it created an express exception to core jurisdiction.

Under these facts, the Court finds it has core jurisdiction to enter a final judgment on the issue of the extent of the indebtedness owed by Defendant to Plaintiff, as well as whether that obligation is excepted from discharge. Because it is a core matter, the Court can evidence its decision by entry of an appropriate, enforceable money judgment.

III. *Dischargeability of the Indebtedness.*

■ The Court has previously found, and the Defendant concedes, that Defendant's obligation to make restitution payments is excepted from his discharge in bankruptcy under Section 523(a)(7). *See* Memorandum of Decision, at 3; *In re Currey,* 92 I.B.C.R. at 221. Because of this, Defendant argues that the Court need go no further in this action and that Plaintiff should be required to simply allow Defendant to make the payments specified by the state court.

This argument ignores an important point. Plaintiff is obviously a beneficiary of the state court's restitution order entered in the criminal proceedings. However, as this Court has previously held, Plaintiff's claim against Defendant is based on the dishonor of the checks independent from any obligation created via the criminal prosecution. Idaho Code §§ 28–3–507 and 1–2301A. "[Plaintiff] would have an enforceable right to payment based on the checks even if no grounds existed to charge Currey with a crime." *In re Currey,* 92 I.B.C.R. at 175. Plaintiff alleges that the tender of the checks under these facts was fraudulent. Therefore, Plaintiff has a separate and distinct claim for his losses which the Court must examine. The entry of the restitution order in the criminal proceedings is not a bar to Plaintiff's prosecution of a civil action against Defendant to recover on the checks, and to determine the dischargeability of any resulting liability.

■ After a review of the facts and record, the Court finds that Plaintiff is entitled to judgment against Defendant based upon the fraudulent tender of the worthless checks, and that such liability is excepted from discharge under the "actual fraud" provisions of Section 523(a)(2)(A). This finding is based upon the facts found in connection with the criminal action.

The U.S. Supreme Court in *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) held "[w]e now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." Stated otherwise, a state court judgment finding the debtor guilty of fraud in a credit transaction may be used as conclusive proof that a nondischargeable obligation exists in a subsequent adversary proceeding in the debtor's bankruptcy case. *See Id.* 498 U.S. at 285, 111 S.Ct. at 658; *In re Yarbrow,* 150 B.R. 233, 237 (9th Cir.B.A.P.1993).

In this action, Defendant pleaded guilty in state court of violating Idaho Code § 18–3106(b) in connection with his tender of the

---

**2.** Section 157(b)2)(*O*) gives core status to a "proceeding affecting the ... adjustment of the debtor-creditor relationship ... except personal injury tort or wrongful death claims." While less clear, this provision provides another possible source of this Court's jurisdiction here.

worthless checks to Plaintiff. The statute provides that:

18–3106. Drawing check without funds—Drawing check with insufficient funds—Prima facie evidence of intent—Standing of person having acquired rights—Probation conditions.—

. . . .

(b) Any person who for himself or as the agent or representative of another or as an officer of a corporation, wilfully, with intent to defraud shall make, draw, utter or deliver, or cause to be made, drawn, uttered or delivered, any check, draft or order for the payment of money in the sum of fifty dollars ($50.00) or more, upon any bank or depositary, or person, or firm, or corporation, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has some but not sufficient funds in or credit with such bank or depositary, or person, or firm, or corporation, for the full payment of such check, draft or order upon its presentation, although no express representation is made with reference thereto, shall upon conviction be punished by imprisonment in the state prison for a term not to exceed three (3) years, or by a fine not to exceed five thousand dollars ($5,000), or by both such fine and imprisonment.

In other words, Defendant admitted to the state court, and it found in its judgment of conviction, that Defendant delivered the checks to Plaintiff knowing that he did not have the funds on deposit to cover the checks, and that he did so wilfully and with the intent to defraud the Plaintiff. These findings support a claim in favor of Plaintiff against Defendant under the statutes for the amount of the checks, and in addition support a finding that the indebtedness created thereby is excepted from Defendant's discharge under Section 523(a)(2)(A).[3]

Plaintiff presented no proof as to why the obligation should be excepted from discharge under Section 523(a)(4). There is no evidence to suggest that Defendant occupied the status of a fiduciary as to Plaintiff or that Defendant performed any of the acts set forth in this section, and therefore, Plaintiff's claim in this regard lacks merit.

IV. *Amount of the Indebtedness.*

Plaintiff agrees that it is entitled to only one satisfaction of its claim against Defendant, and that therefore, any payments received by Plaintiff whether they be a result of the restitution award, the bond payment, or otherwise, must be credited against the claim. Plaintiff is also entitled to interest on its claim at the statutory rate of 12% per annum to the date of judgment herein.

■ Defendant seeks to revisit an issue earlier disposed of by the Court in its summary judgment decision. Defendant urges that he should not be penalized by the Court's refusal to allow him credit against Plaintiff's claim for amounts he paid to Plaintiff, but thereafter recovered by Defendant's Chapter 7 Trustee, amounting to $8,534.61. He points out that he will, in effect, be required to pay this amount to Plaintiff twice.

None of the facts presented to the Court at trial dissuade this Court from adhering to the position taken in its earlier ruling on the summary judgment motion. In that decision, the Court determined that the avoidance of the payments made by Defendant to Plaintiff by the Chapter 7 Trustee effectively reinstated Plaintiff's claim against Defendant in a like amount. Memorandum of Decision at 4–5; *Currey*, 92 I.B.C.R. at 221. Section 502(h) of the Bankruptcy Code compels this result. However, there is also a sound equitable basis for this holding under these facts. As between the parties, the Defendant, as the culpable party, should bear any burden occasioned by the avoidance of the payment.

---

**3.** The elements of proof necessary to render a debt nondischargeable under Section 523(a)(2)(A) are that defendant knowingly made a false representation of material fact with the intention or purpose of deceiving the creditor, upon which the creditor justifiably relied and as a result of which the creditor suffered damages. *In re Gray*, 92 I.B.C.R. 176, 177.

### V. *Conclusion.*

The Court has core jurisdiction in this action to determine the amount of Plaintiff's claim against Defendant, and to enter a money judgment thereon, in connection with deciding the dischargeability of that claim under Section 523(a) of the Bankruptcy Code. Plaintiff is entitled to a judgment against Defendant in the face amount of the insufficient funds checks, together with legal interest thereon, less credit for payments made by Defendant which were not recovered as preferences and payments made through his bond. Defendant is not entitled to credit against Plaintiff's claim for amounts recovered from Plaintiff by the Chapter 7 Trustee. The amount of Plaintiff's claim is determined to be $33,-558.49 as of May 7, 1993.[4] Plaintiff's claim is excepted from discharge pursuant to Sections 523(a)(2) and (a)(7) of the Bankruptcy Code.

This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052. Counsel for Plaintiff shall submit an appropriate form of judgment for entry by the Court.

---

**4.** The amount is calculated from August 1, 1990, which is the date on which the checks were dishonored by the bank. *See* Exhibit A to Plaintiff's Reply and Consent to Motion by Defendant to Augment Trial Record.