**In re Charles T. GOFF and Judy Goff, Debtors.**

**Charles T. GOFF and Judy Goff, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 94–24582–B. Adv. No. 94–0559.**

United States Bankruptcy Court, W.D. Tennessee.

April 6, 1995.

George W. Stevenson, Chapter 7 Trustee, Memphis, TN.

Tamra Sikkink, Hayden Lait, Byrd & Cobb, Memphis, TN, for plaintiffs.

Carol P. Lenhart, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, William W. Siler, Asst. U.S. Atty., Memphis, TN, for defendant.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

This proceeding is before the Court on the motion of the defendant, Internal Revenue Service, for summary judgment filed in response to the debtors' "Complaint to Determine Dischargeability of the Prior Tax Obligations." At issue is whether tax obligations for the years 1984 through 1987 are excepted from the debtors' general discharge under § 523(a)(1)(C) as a matter of law. The government agrees that the tax obligations are dischargeable as to Judy Goff; thus, the dispute exists only as to Charles T. Goff. The following constitutes findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### FACTUAL SUMMARY

The debtors, Charles T. and Judy Goff, filed their voluntary joint Chapter 7 petition on May 11, 1994. Among the obligations listed on the debtors' schedules is a disputed, priority claim of the Internal Revenue Service in the amount of $103,863.18. The debtors have been granted a discharge of their remaining dischargeable debts. On June 13, 1994, the debtors commenced this adversary proceeding seeking a determination of dischargeability of the debtors' personal income tax liabilities for the fiscal years 1984, 1985, 1986 and 1987. In its first amended answer, the defendant admitted that Judy Goff's liabilities for federal income tax, penalty and

interest for those tax years are dischargeable. The defendant additionally concedes in its amended answer that Charles T. Goff's liabilities for penalties imposed in connection with his obligation to file tax returns and pay tax for his tax years 1984, 1985, 1986 and 1987 are dischargeable. However, in this motion, the Internal Revenue Service asserts that Mr. Goff's tax and interest liabilities for the years 1984, 1985, 1986 and 1987 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) as a matter of law.

According to the memoranda, pleadings, affidavits and exhibits filed, the defendant's positions arise from a criminal guilty plea and a consent decision executed by Mr. Goff and the Internal Revenue Service in resolution of prepetition United States Tax Court litigation. It is the debtor's position in this proceeding that the Tax Court consent decision does not include any factual finding to support the amount of the tax deficiency or the imposition of fraud penalties. Mr. Goff now denies the amount of untaxed monies allegedly paid to him and objects to the government's characterization of the monies allegedly paid to him during the years in question.

The record reflects that Mr. and Mrs. Goff were formerly residents of West Burlington, Iowa, where Mr. Goff was employed as the production manager of Antennacraft Company, a division of Tandy Corporation. Mr. Goff's job responsibilities included overseeing the sale of his employer's scrap metal to an individual, named Mr. Abe Ruben, Jr., who is now deceased. Ex. D to Plaintiffs' Memorandum, Affidavit of Charles Goff. The Internal Revenue Service takes the position that payments were made from Mr. Ruben to the debtor, in currency and by check, for the sale of scrap metal that the debtor never reported to his employer. Ex. D to Defendant's Memorandum, ¶¶ 5–8. The debtor contested in a guilty plea stipulation that the payments were for sales of scrap metal and asserted that they were made "because Mr. Goff allowed Mr. Ruben, rather than some other dealer, to receive the scrap that Mr. Goff was authorized to dispose of." *Id.* ¶ 10.

On February 14, 1990, Mr. Goff entered a plea of guilty in the United States District Court for the Southern District of Iowa to a one-count criminal information charging that he willfully attempted to defeat and evade a large portion of the income tax owing by him and his spouse for the tax year 1987 by filing a false and fraudulent return. Exs. A, B and C to Defendant's Memorandum. In exchange for Mr. Goff's guilty plea the United States agreed not to file any additional charges for the tax years 1985, 1986 and 1987. Attached to Exhibit A to Defendant's Memorandum and made a part of the plea agreement was a document styled "Exhibit 'A'–Stipulation To Plea Agreement," which was signed by the debtor and his attorney. Ex. C to Plaintiffs' Memorandum; Ex. D to Defendant's Memorandum. It is in paragraph 10 of this stipulation that the debtor "admits that he received substantial sums of money from Mr. Ruben during calendar years 1985, 1986 and 1987 which he knew was income and not a gift and which he intentionally and deliberately did not report as income on his income tax returns." This stipulation and specifically this admission provides the factual basis for the summary judgment motion. Following execution of the stipulation and plea agreement, Mr. Goff pleaded guilty to tax evasion pursuant to 26 U.S.C. § 7201 for the year 1987 only. Ex. C to Defendant's Memorandum.

In June of 1991, the debtors received a Notice of Deficiency ("Notice") issued by the Commissioner of the Internal Revenue Service that set forth proposed assessments to be made based on the debtors' unreported income for the years 1984 through 1987. In addition to deficiency assessments, the Notice proposed the assessment of civil fraud penalties against the plaintiffs for 1984 through 1987. Ex. E to Defendant's Memorandum; Ex. E to Plaintiffs' Memorandum. The debtors responded to the Notice by filing a petition with the United States Tax Court in order to challenge these deficiencies. Ex. F to Defendant's Memorandum. In that petition the debtors challenged the merits of the tax assessments and the imposition of civil fraud penalties for the years in question. The Internal Revenue Service filed an answer in which it set forth the factual basis for its assessments, including

those facts found in the stipulation discussed above. Ex. G to Defendant's Memorandum.

In addition, the Internal Revenue Service alleged in the Tax Court that the debtors had intentionally attempted to evade payment of income tax and had filed fraudulent returns by failing to report the income received from Mr. Ruben on their joint returns. According to the government's answer in the Tax Court, Mr. Ruben's records established that the debtor, Mr. Goff, was paid $9,660.00 in 1984; $23,741.00 in 1985; $28,049.71 in 1986, and $29,186.00 in 1987, which amounts he omitted from his federal income tax returns. Ex. G to Defendant's Memorandum. In their "Reply" to the answer in the Tax Court, the debtors denied filing fraudulent returns and asserted that the debtor, Mr. Goff, had omitted Mr. Ruben's payments from his tax return because Mr. Ruben had characterized them as loans or gifts. Ex. H to Plaintiffs' Memorandum. The debtors also denied the amount of unreported income alleged by the government. *Id.*

On August 3, 1992, Judge L.W. Hamblen, Jr. of the United States Tax Court entered a "Decision" "[p]ursuant to the agreement of the parties," Charles T. and Judy J. Goff and the Internal Revenue Service, and stated that "it is ORDERED AND DECIDED: That there are deficiencies in income tax and additions to tax due from the petitioners ..." Ex. I to Defendant's Memorandum. These agreed upon deficiencies, penalties and additions, as provided by the Internal Revenue Code, are set forth in the decision.[1] The parties' agreement in the Tax Court is evidenced by the recitation that it is "stipulated that the Court may enter the foregoing decision" and by the fact that the decision is signed both by counsel for the debtors and counsel for the Internal Revenue Service. *Id.*

Notwithstanding entry of this decision and the separate guilty plea, Mr. Goff now claims that he is not liable for payment of the assessments at issue. The debtor contends that the prior criminal and civil judgments are not entitled to collateral estoppel effect in

this proceeding because the consent judgments did not result from actual litigation of the issue of fraud and of the amount of the tax liabilities. The Internal Revenue Service contends that the judgments entered in both the criminal and civil court proceedings are entitled to collateral estoppel effect in this proceeding. Further, according to the defendant, the debtor's admission in the above discussed Stipulation that he intentionally and deliberately did not report payments that he received and knew were income on his tax returns for 1985, 1986 and 1987 supports its motion for summary judgment for the tax liabilities for those years.

## SUMMARY JUDGMENT

Summary judgment is available only when the court can find from the

> pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). According to the United States Supreme Court, the standard set forth by this rule "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis in original). The party seeking summary judgment bears the initial burden of establishing the absence of genuine issues of material fact. However, the "ultimate burden" of demonstrating the existence of a genuine issue of material fact lies with the nonmoving party. *In re Suburban Motor Freight Inc.,* 124 B.R. 984, 992 (Bankr.S.D. Ohio 1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). The substantive law governing the case will determine what issues are material and what burden of proof standard is applicable.

1. The penalties for fraud were assessed in accordance with former 26 U.S.C. § 6653(b). This fraud provision is now found at 26 U.S.C. § 6663 pursuant to the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(a), 1989 U.S.C.A.N. (103 Stat) 2106, 2397.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

### SECTION 523(a)(1)(C)

As noted above, after commencement of their bankruptcy case, the debtors filed this complaint in an effort to discharge the tax liabilities at issue. Exceptions to the discharge of tax obligations are found at § 523(a)(1) of the Bankruptcy Code, which provides in pertinent part:

> (a) A discharge under section 727, ... of the title does not discharge an individual debtor from any debt—
>
> > (1) for a tax return ...
> >
> > > (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax; ...

11 U.S.C. § 523(a)(1)(C).

■ Use of the disjunctive "or" makes it clear that under this provision discharge of a tax liability will be denied either for filing a fraudulent return or for willfully attempting to evade or defeat the tax. Such a latter attempt need not be fraudulent to render the obligation nondischargeable, it must only be "willful." In a recent opinion construing this section, the Court of Appeals for the Sixth Circuit concluded that a willful attempt to evade or defeat a tax liability "includes both acts of commission and acts of omission." *Edward W. Toti v. United States of America (In re Toti)*, 24 F.3d 806, 809 (6th Cir.1994), *cert. den.* —— U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). In the *Toti* case, the debtor failed to file federal income tax returns or pay federal income taxes from 1974 through 1981, "despite the fact that he knew he was liable for the taxes." 24 F.3d at 807. He was indicted on three counts for failure to file income tax returns for 1974, 1975 and 1976. He pleaded guilty and was sentenced for willfully failing to file his 1976 return. The government dismissed the two counts for 1974 and 1975. Mr. Toti subsequently filed a voluntary Chapter 7 petition and sought a judicial determination that his tax liabilities were dischargeable. The bankruptcy court held for the debtor's discharge, reasoning that, like the federal criminal statute, § 523(a)(1)(C) requires a "willful commission of an act to evade or defeat ... tax liability" and that "failing to file a tax return and make a payment is merely an omission." *In re Toti*, 24 F.3d at 808.

■ On appeal, the district court reversed, holding that the bankruptcy court had applied the wrong legal standard. The district court held that the applicable standard for "willful" was that used in other civil cases, that is, "voluntary, conscious, and intentional" and that under such a standard, "Toti's failure to file returns and to pay taxes were willful acts." *Id.* The Court of Appeals for the Sixth Circuit agreed, stating: "The district court correctly held that failure to file a tax return and failure to pay a tax fall within the definition in § 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability." *In re Toti*, 24 F.3d at 809. The Court further stated that "[w]e believe that a plain reading of § 523(a)(1)(C) includes both acts of commission and acts of omission." *Id.* This is the law of the Sixth Circuit that guides this Court. Nondischargeability under § 523(a)(1)(C) may be demonstrated with a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

### COLLATERAL ESTOPPEL

■ It is well settled "that collateral estoppel principles ... apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. at 284, n. 11, 111 S.Ct. at 658, n. 11. Collateral estoppel, or issue preclusion, bars relitigation of particular issues and is typically applicable when it is found that "the precise issue in the later proceedings [has] been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981). In determining whether the decisive issue was actually litigated and necessary to the prior decision, the bankruptcy court should look at the entire record of the prior proceeding and not just at the prior judgment. *Id.*

■ Because of this requirement of actual litigation of the identical element, collateral estoppel rarely applies to default judgments awarded in a nonbankruptcy forum so as to make those default judgments nondischargeable. *See Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *Bay Area Factors v. Calvert (In re Calvert)*, 177 B.R. 583 (Bankr. W.D.Tenn.1995). This Court previously refused to give collateral estoppel effect to a default judgment where there was no showing that the relevant elements of § 523(a) "were actually litigated and necessary to the prior judgment." *Pizza Palace, Inc. v. Stiles (In re Stiles)*, 118 B.R. 81, 86 (Bankr. W.D.Tenn.1990). *Compare Harris v. Byard (In re Byard)*, 47 B.R. 700, 12 Bankr.Ct.Dec. 1069, 12 CBC 2d 387, Bankr.L.Rep. ¶ 70,341 (Bankr.M.D.Tenn.1985) (giving full faith and credit effect to prior state court default judgment). However, where there is substantial participation by a party in an adversary context in which the party is afforded a reasonable opportunity to contest the merits but chooses not to, the actually litigated requirement may be satisfied even though the proceeding results in a default judgment. *F.D.I.C. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995). "It is implicit in the doctrine of collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding." *Id.* at 369.

■ Moreover, when a consent decree in a prior proceeding incorporates factual findings necessary to a judgment, those findings are considered actually litigated for collateral estoppel purposes. *Graham v. Internal Revenue Service (In re Graham)*, 973 F.2d 1089, 1097 (3rd Cir.1992); *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987); *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir.1987). The actually litigated element of collateral estoppel does not require that the parties always go through every phase of a trial. The facts of each case must be examined closely to determine if preclusive effect is to be given to a prior judgment.

This is especially true when the subsequent proceeding presents an issue of dischargeability. In those cases where consent judgments and default judgments are not afforded collateral estoppel effect, there is often an insufficient record of the prior court proceedings to provide evidence of substantial, if any, participation by the debtor in the prior litigation. *In re Graham*, 973 F.2d at 1098; *In re Calvert*, 177 B.R. at 583, *In re Stiles*, 118 B.R. at 86.

## DISCUSSION

In this proceeding, the summary judgment relief requested by the Internal Revenue Service may be granted if the Court concludes that the prior District Court and Tax Court judgments are entitled to collateral estoppel effect for dischargeability purposes or if the Court makes a finding from the pleadings and record before it that there are no genuine issues of material fact necessary for resolution of the dischargeability question. The governing substantive law is found at § 523(a)(1)(C) of the Bankruptcy Code.

■ Given that a consent decree and a criminal conviction that incorporate factual findings may be entitled to collateral estoppel effect, it is clear that Charles T. Goff is collaterally estopped from asserting that his liability for the 1987 tax obligation is dischargeable. *See In re Daily*, 47 F.3d at 368; *In re Graham*, 973 F.2d at 1098. As discussed above, the documents submitted in this proceeding include the debtor's plea bargain admission that he willfully attempted to evade and defeat a part of his 1987 income tax by filing a false and fraudulent income tax return. Exs. A and B to Defendant's Memorandum. The plea agreement further provides that the debtor agrees that the amount of the 1987 "tax loss to the United States is in the range of $20,001 to $40,-000.00" and that he will cooperate with the Internal Revenue Service in assessing his "true tax liability for the years 1985, 1986 and 1987." Ex. A to Defendant's Memorandum. Guilty pleas, like criminal convictions upon a trial, are governed under a higher standard of proof than is dischargeability and, as a result, may be given preclusive

effect in appropriate cases. *See, e.g., Itano Farms, Inc. v. Currey (In re Currey)*, 154 B.R. 977, 981 (Bankr.D. Idaho 1993). Here, the facts admitted in the guilty plea for tax evasion in 1987 are the same facts that support nondischargeability of the tax obligations for that year. *See generally* Anthony Michael Sabino, When Tax Evaders Go Bankrupt, 27 SUFFOLK UNIV. L.R. 5, 28 (Spring 1993) (concluding that "willfulness" is the same in the bankruptcy and criminal law contexts).

There is no such plea agreement between the parties with respect to the debtor's 1984, 1985 or 1986 tax liabilities. However, in connection with the guilty plea agreement for 1987, the debtor also executed a "Stipulation to Plea Agreement" that includes stipulation number 10 wherein the debtor "admits that he received substantial sums of money from Mr Ruben during calendar years 1985, 1986 and 1987 which he knew was income and not a gift and which he intentionally and deliberately did not report on his income tax returns." Ex. D to Defendant's Memorandum. As one court observed, a finding that one evaded taxes "with deliberation" is the equivalent of a willful evasion. *Lilley v. Internal Revenue Service (In re Lilley)*, 152 B.R. 715, 721 (Bankr. E.D.Pa.1993).

Given this debtor's admission in his plea stipulation, this Court can conclude as a matter of law that Mr. Goff willfully attempted to evade or defeat part of his 1985, 1986 and 1987 tax liabilities within the meaning of *Toti*[2] and 11 U.S.C. § 523(a)(1)(C). Thus, the Internal Revenue Service is entitled to summary judgment holding that Mr. Goff's 1985 and 1986 as well as 1987 tax liabilities are nondischargeable. The Court reaches this conclusion notwithstanding the debtor's attempt to inject a factual issue by now contending that the substantial sums of money he received were not for scrap sales but were for the preferred treatment he afforded Mr. Ruben. The reason for the payments does not change the fact that the payments constitute gross income within the meaning of the Internal Revenue Code under either scenario. 26 U.S.C. § 61 ("... gross income means all income from whatever source derived ..."). The debtor can not create an issue of material fact by taking positions inconsistent with his prior guilty plea or stipulations entered as a part of that guilty plea.

The issue next becomes whether Mr. Goff's 1984 tax liability is nondischargeable as a matter of law. In support of its assertion that Mr. Goff is collaterally estopped to deny the nondischargeability of his 1984 tax liability, the defendant relies upon the August, 1992, decision of the United States Tax Court, which "[p]ursuant to the agreement of the parties" sets forth the debtor's tax deficiencies and additions to tax due for the years 1984, 1985, 1986 and 1987, including a recitation of the authority of the Internal Revenue Code's fraud penalty provision. Ex. I to Defendant's Memorandum; Ex. F to Plaintiffs' Memorandum. Arguably, the debtor's commencement of the Tax Court litigation, his filing of pleadings and his consent to entry of the decision that imposes penalties for fraud are sufficient to establish the debtor's participation in the litigation and his agreement that the 1984 deficiency resulted from fraud. *See In re Daily*, 47 F.3d at 368. However, unlike the record relative to the 1985, 1986 and 1987 tax liabilities, there are no factual stipulations, admissions or findings regarding the 1984 liability before this Court. Unlike the *Lilley* case, the Tax Court did not expressly find anything other than the amount of "deficiencies in income tax and additions to tax due," with a reference to the statutory provisions. No admissions, factual findings, or intention of the parties concerning the fraud issue or a willful evasion for the 1984 taxes are incorporated into the Tax Court's decision. Moreover, the government has admitted in its answer to the debtors' complaint that the fraud penalties, which are the only discernable reason from the face of the Tax Court decision for denying the dischargeability of the 1984 tax liability, are dischargeable. The debtors' Tax Court counsel stipulated to entry of the decision but that stipulation is bare of any factual support. Thus, this Court concludes that, as

2. *In re Toti*, 24 F.3d 806 (6th Cir.1994).

was the situation in the Third Circuit's *Graham* decision, the issues of fraud or willful evasion were never actually litigated nor admitted as to the 1984 tax liabilities. 973 F.2d at 1098. There is, therefore, a genuine issue of material fact on the dischargeability of Mr. Goff's 1984 tax liabilities.

■ This leads to the final issue presented in this proceeding, whether the amounts of the assessed tax deficiencies for which the debtor is liable are subject to collateral estoppel effect. The debtor now claims that he disputes the amounts claimed by the Internal Revenue Service, contending that these amounts are based upon records falsified by the payor, Mr. Ruben, to minimize Mr. Ruben's tax liability. Other than his own affidavit, the debtor has presented no evidence in support of this contention. Ex. D to Plaintiffs' Memorandum. Furthermore, he raised this same issue in the prior Tax Court litigation that resulted in entry of the consent decision. Ex. F and H to Defendant's Memorandum. In support of its position, the government has submitted copies of its analysis of the debtor's and Mr. Ruben's records on which its criminal charges were based. Ex. D to Defendant's Memorandum, Attachments 1–4. The Tax Court decision does contain findings of the amounts of the "deficiencies in income tax and additions to tax due" from the debtor, and the debtor's consent to entry of that decision leads this Court to conclude that his present objections raise no genuine issue of material fact. The Tax Court decision is entitled to preclusive effect as to the amounts of tax obligations for all tax years 1984, 1985, 1986 and 1987. The debtor initiated and participated in the Tax Court litigation and he is collaterally estopped from relitigating the amounts of the tax assessments. The debtor essentially seeks to have this Court determine the amount of his tax liabilities. Section 505(a)(2) of the Bankruptcy Code expressly prohibits the bankruptcy court from making such determinations "if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title." *See generally* C. Richard McQueen and Jack F. Williams, Tax Aspects of Bankruptcy Law and Practice, 2d ed., Ch. 3 (1994).

From the above, the Court finds and concludes that:

1. Upon the admission of the government, the tax obligations of Judy Goff for 1984, 1985, 1986 and 1987 are dischargeable;

2. Upon the admission of the government, the penalties imposed by law upon Charles T. Goff for his 1984, 1985, 1986 and 1987 tax years are dischargeable;

3. The Defendant's motion for summary judgment on the issue of whether Charles T. Goff's 1987 tax liability is nondischargeable will be granted on the basis of the collateral estoppel effect of Mr. Goff's guilty plea;

4. The Defendant's motion for summary judgment on the issue of whether Charles T. Goff's 1985 and 1986 tax liabilities are nondischargeable will be granted, there being no genuine issue of material fact as to Mr. Goff's willful evasion of taxes for those two years;

5. The Defendant's motion for summary judgment on the issue of whether Charles T. Goff's 1984 tax liabilities are nondischargeable will be denied, there being a genuine issue of material fact concerning that tax year; and

6. The Defendant's motion for summary judgment on the issue of the amounts of the tax obligations for each of the years 1984, 1985, 1986 and 1987 will be granted, the Tax Court decision having fixed the amount of those obligations.

**A SEPARATE ORDER** will be entered.