**In re Robert F. SIMONE, Debtor.**

**Robert F. Simone, Plaintiff,**

v.

**United States of America, Internal Revenue Service, Defendant.**

**Bankruptcy No. 97–13645SR.**
**Adversary No. 97–0984.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 20, 2000.

Steven B. Mirow, Philadelphia, PA, for Robert F. Simone.

Mitchell W. Miller, Philadelphia, PA, trustee.

## *MEMORANDUM OPINION*

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter before the court is the Motion for Summary Judgment filed by Defendant United States of America, Internal Revenue Service seeking a determination that the tax liability owed by Debtor/Plaintiff Robert F. Simone is nondischargeable. For the reasons expressed below, the motion for summary judgment shall be granted in part and denied in part.

*Facts*

Debtor/Plaintiff Robert F. Simone ("Simone") filed his voluntary Chapter 7 petition on March 27, 1997. On September 10, 1997, Simone filed the above captioned complaint seeking a determination that all of his taxes obligations were discharged. Prior to the filing of his petition, Simone was indicted on approximately eleven charges of evasion of payment of income taxes and willful failure to pay income taxes and one count of conspiracy to defraud the Internal Revenue Service. The charges pertained to the tax years 1984 through 1989.

Simone pled guilty to two counts of tax evasion pertaining to the tax years 1985 and 1989. For 1985, the amount of taxes owed was $24,507 and in 1989 the amount was $29,000. The parties stipulated in the Plea Agreement that the tax loss for the other tax years, 1984, 1986–1988, should be considered for purposes of relevant conduct and that the amounts Simone owed were as follows: 1984—$28,000; 1986—$44,927; 1987—$10,206; 1988—$23,500. The indictment did not allege that the tax returns filed were fraudulent. Guilty Plea Agreement, Exhibit 2 to Declaration of Angelo Frattarelli.

In the Plea and Sentence hearing, the Internal Revenue Service ("IRS") provided a factual basis for the plea agreement. During the years 1984 though 1989 Simone was a lawyer operating his practice as a sole proprietor. The IRS stated that Simone turned monies that he had received for legal fees over to his long time accountant, Irving Reiss ("Reiss"), rather than deposit them into his own personal or business account. Simone would then instruct Reiss to pay certain expenses from those funds. The IRS contended that he used this method to shield funds from the IRS while making discretionary payments to others. During the tax year 1985, Simone gave Reiss approximately $66,666 to deposit. Reiss deposited the money into an account entitled Business Loans, Inc. Simone had no relationship to the entity Business Loans, Inc.

The IRS stated that from the $66,666, Simone authorized Reiss in January to pay the IRS $10,000 for estimated 1984 taxes. The IRS also stated that payments of approximately $14,666 were made to assist with debts incurred by Simone's son in a new business that he partially owned. In addition, Simone instructed that $44,500 be wired to a real estate agent in St. Bart's in the West Indies for partial payment of a vacation condominium. After those payments were made, in August of 1985, Simone received a loan in the amount of $45,000 which was used to complete the purchase of the St. Bart's condominium. Repayment of the loan in 1985 totaled approximately $12,000.

Additional costs of $5,350 were spent on vacations in 1985 as well as a $5,000 payment made toward the purchase of a boat. Deposits of approximately $51,000 were made directly into his wife's checking account.

Regarding the tax year 1989, Simone again remitted funds to Reiss rather than deposit them in his own account. $65,000 was deposited into the Business Loans, Inc. account. Of this amount, $13,000 was used to pay state and local taxes, $31,000 was issued to Simone's son to assist him in business, and the remaining approximately $15,000 was the subject of dispute regarding purported payments to the IRS. Simone asserted that he authorized $15,000 be paid to the IRS as partial payment for his tax obligations. The IRS asserted that no such payment was ever negotiated by the IRS.

During 1989, Simone also deposited approximately $35,000 in his wife's checking account. Of those funds, approximately $10,000 was paid toward a loan for the purchase of a 30 foot boat and approximately $11,000 was paid on a lease of a Jaguar XJ6.

At the plea and sentence hearing, Simone stated that he did not know that the

accountant was placing the money in the account of Business Loans, Inc. and that he gave the money to Reiss, in part, to protect himself from overspending. Simone also argued that all of his earnings were accounted for and he did not conceal income regardless of where it was deposited. He further contended that he instructed Reiss to pay $15,000 to the IRS and that upon inquiry Reiss had told Simone that the payments had been made.

Having pled guilty to two counts of evasion, the other counts against Simone were dismissed. However, the amount of taxes due and owing for all relevant years, 1985–1989, was taken into consideration for purposes of sentencing. For that purpose, Simone and the IRS agreed that the total tax owed to the IRS was $160,140.

The Plea and Sentence Hearing took place in October of 1994. In March of 1997, Simone filed his voluntary petition. The case was a no asset case. Simone was granted his discharge in the ordinary course of the case. Thereafter, he sought a determination that his tax obligations were discharged.

The IRS filed a motion for summary judgment that the obligations should all be held nondischargeable.

*Analysis*

A motion for summary judgment should be granted if "the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56; F.R.Bankr.P. 7056.

Simone's complaint did not state the specific tax years for which it was seeking a finding of dischargeability. In its motion for summary judgment, the IRS argues that the tax liabilities for the years 1993 to present are excepted from discharge pursuant to 11 USC § 523(a)(1)(A) and the liabilities for the years 1984 through 1989 are excepted from discharge on the basis of collateral estoppel and pursuant to 11 USC § 523(a)(1)(C).

In his response Simone asserts that genuine issues of material fact exist; that 11 USC § 523(a)(1)(C) does not except the tax liabilities for 1984 though 1989; and that he is not collaterally estopped from discharging those tax debts over three years old.

11 USC § 523(a)(1)(C) provides, in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

Simone did not fail to file his tax returns. Nor is there any allegation that the returns filed were fraudulent. Therefore, the first prong of the statute is not applicable here. The issue is whether the failure to pay the taxes was a willful attempt to evade or defeat such tax thereby falling within the second prong of statutory exception to discharge.

Several circuit courts of appeal have addressed the issue of 11 USC § 523(a)(1)(C). It has been held that mere nonpayment of taxes, with nothing more, is not a willful attempt to evade or defeat taxes and does not come within the statutory exception to discharge. *In re Haas,* 48 F.3d 1153, 1158 (11th Cir.1995).

The Court of Appeals for the Third Circuit has addressed this issue in *In re Fegeley,* 118 F.3d 979 (3d Cir.1997). Fegeley failed to file his tax returns for the years 1983, 1984 and 1985. He later filed them in 1987 after being contacted by the Criminal Investigation Division of the IRS. There was no allegation that the tax returns, upon filing, were fraudulent. In 1989, Fegeley pled guilty to one of three counts charged for willful failure to file his income tax.

After filing bankruptcy in 1991, the IRS argued that the tax liabilities for 1983–85 were nondischargeable pursuant to 11 USC § 523(a)(1)(C). The sole issue before the circuit court of appeals was whether Fegeley " 'willfully ... attempted to evade or defeat' his taxes for the years 1983, 1984, and 1985 within the meaning of the second part of § 523(a)(1)(C)". 118 F.3d at 983.

■ While abiding by the limitation set out in *Haas* regarding mere nonpayment, the Court of Appeals for the Third Circuit also gave weight to the fact that the statute includes the phrase "in any manner". Therefore, the court stated that the nonpayment of taxes should be looked to as "relevant evidence which [we] should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." *Id.* citing *Dalton v. I.R.S.*, 77 F.3d 1297, 1301 (10th Cir.1996).

The court set forth a two part analysis to determine the second prong of the statute. First, it looked to a conduct requirement and second to a mental state requirement in interpreting "willfully". The court found that Fegeley's intentional failure to file his tax returns combined with his failure to pay when he had the financial ability to do so showed that he willfully attempted to evade or defeat his taxes. This conduct fell within that contemplated by the exception to discharge provision.

Regarding the mental state requirement, the court adopted the civil willfulness' standard requiring a showing that the attempts by the debtor were voluntary, conscious and intentional. *Id.* at 984. That is, that the debtor had the duty, knew he had the duty and voluntarily and intentionally violated the duty. It was held that Fegeley had the duty to file his tax returns, knew he had the duty and voluntarily and intentionally violated it. In addition, the court considered the fact that Fegeley had the financial wherewithal to discharge the duty during the relevant time.

Simone argued that his situation was clearly distinguishable from that in *Fegeley* because he timely filed accurate tax returns and there was no concealment on his part. Simone urged this court to adopt an interpretation similar to that in *In re Haas*, 48 F.3d 1153 (11th Cir.1995) and *In re Griffith*, 174 F.3d 1222 (11th Cir.1999). In *Haas*, the debtor had filed timely accurate returns but had not paid the tax due. His income was used to pay personal and business debts. The Court of Appeals for the Eleventh Circuit held that the willful attempt to evade or defeat referred to the assessment of the tax as opposed to the payment. 48 F.3d at 1161. Similarly in *Griffith*, it was held that the exception to discharge applied to conduct in evading the assessment of a tax.

At the time of the filing of this summary judgment pleading and the hearing on this matter, *Griffith* was being reconsidered by an *en banc* panel of the 11th Circuit. Since that time, the court of appeals *en banc* has rendered its decision. *In re Griffith*, 206 F.3d 1389 (11th Cir.2000). The court has now interpreted the statute in a fashion similar to the other circuit courts that have addressed the issue. That is, the 11th circuit court has now determined that § 523(a)(1)(C) renders tax debt nondischargeable where the debtor engaged in affirmative acts to evade *payment* of taxes. *Id.* at 1395–96. It reaffirmed its primary holding of *Haas* (mere nonpayment of taxes without more does not constitute a willful attempt to evade or defeat) but found that the statute is applicable to situations of nonpayment where a willful attempt to evade or defeat has occurred. *Id.*

This recent holding does not bolster Simone's position that this court should look to the interpretation of the statute held by the Eleventh Circuit. In any event, this court is bound to follow the precedent established in this circuit in *Fegeley*.

*Tax Years 1985 and 1989*

■ For those years in which Simone pled guilty to evasion of payment, collater-

al estoppel prevents Simone from contending nondischargeability. There is no factual dispute regarding the guilty plea for the tax years 1985 and 1989. The factual basis of this matter is clearly set forth in the transcript of the Plea and Sentencing hearing.

The admissions made by Simone in the Plea and Sentence hearing and the language used therein are a similar analysis as the determination of the discharge exception. The district judge asked Simone whether or not he disputed what the IRS had stated as making out a tax evasion violation:

> THE COURT: I take it you do not dispute what [IRS] has said to the extent that, as far as Counts Two and Six are concerned, that what she said makes out a violation of 26 U.S.C. Section 7201 which contains three elements.
>
> 1. That you attempted to evade or defeat the payment of taxes.
> 2. That there was an additional tax due and owing.
> And, 3. That you acted willfully. To the extent—
> THE DEFENDANT: Right. May I say— . . .

Government Exhibit 3, Plea and Sentence Transcript, p. 34.

Simone did not dispute the facts as presented by the IRS at the hearing although he took issue with the consequence or interpretation of some of them, thus admitting the conduct requirement. Furthermore, when factual findings are incorporated into consent decree, they satisfy the "actually litigated" element of issue preclusion where those facts are necessary to a judgment. *In re Graham,* 973 F.2d 1089 (3d Cir.1992).

Simone further admitted the elements necessary for the mental state requirement under *Fegeley* of the exception to discharge. Shortly after the above exchange, the court asked Simone if these things happened by accident and Simone responded:

> THE DEFENDANT: They didn't happen by accident. I acted intentionally and—
> THE COURT: Consciously?
> THE DEFENDANT: Consciously, yes, sir.
> THE COURT: Okay.
> THE DEFENDANT: I knew I owed the IRS money.
> THE COURT: You knew it was owed, and you didn't pay.
> THE DEFENDANT: And I didn't pay them all. I knew I owed other people money and I didn't pay them all.

Government Exhibit 3, Plea and Sentence Transcript, p. 35.

■ "Guilty pleas, like criminal convictions upon a trial, are governed under a higher standard of proof than is a dischargeability and, as a result, may be given preclusive effect in appropriate cases." *In re Goff,* 180 B.R. 193 (Bankr.W.D.Tenn. 1995). Summary judgment will be granted to the IRS regarding the tax liability for the years 1985 and 1989.

*Tax Years 1984, 1986, 1987 and 1988*

■ The preclusive effect of Simone's plea agreement is less clear for those years for which he was charged with tax evasion by the counts dismissed as part of the plea. Simone stipulated for the purposes of determining relevant conduct for the sentencing phase that he owed additional taxes in the amount of $106,633 (1984: $28,000; 1986: $44,927; 1987: $10,206; 1988: $23,500). For purposes of relevant conduct, the total taxes stipulated to was $160,140 which included the years for which he pled guilty. Simone's stipulation for purposes of relevant conduct, however, does not necessarily constitute an admission of the elements of an offense or, in this case, the necessary conduct for "willful attempt to evade or defeat".

The only facts presented at the plea and sentence hearing concerned specific events and conduct in the years for which Simone

pled guilty. Simone's admissions were as to those two years only. The only facts concerning years 1984, 1986, 1987 and 1988 were those concerning the above amounts due and that through these years Simone gave Reiss monies for deposit.

The IRS stated that through the years 1984 through 1989 Simone's only relationship with the entity Business Loans, Inc. was his relationship with Reiss. However, there is nothing specific regarding the remitted funds or deposits into the Business Loan, Inc. account for years other than 1985 and 1989. Nor is there is any information regarding whether Simone had surplus funds during those years to pay his taxes.

Beyond the general admissions of nonpayment there are no facts, stipulations or admissions on the record that address the issue of whether Simone's nonpayment of taxes was a "willful attempt to evade or defeat".

It may be possible for the court to presume that Simone, as a lawyer, knew he had a duty to pay his taxes in the specific years in question. However, without additional facts on the record, the court cannot presume that Simone voluntarily and intentionally violated that duty during those years. Having admitted to doing so in two of the years charged does not necessarily translate into a voluntary and intentional violation in the other years. Different facts may have existed in those years which led to or can explain the nonpayment. For example, Simone's financial wherewithal to pay the taxes during these years is unknown or whether he was making payments on what could be considered luxury items during this time.

Under *Fegeley*, nonpayment of taxes is to be considered *in the totality of conduct.* There is insufficient evidence on the record for these years that would establish either the conduct or the mental state requirement of Section 523(a)(1)(C) required by *Fegeley*. Issue preclusion is not applicable for these tax years because the facts necessary for a determination of Si-

mone's conduct and mental state were not admitted or actually litigated. *In re Graham*, 973 F.2d at 1098 (issue preclusion did not apply where debtor's stipulation entered in the tax court prepetition established the validity of the deficiencies, but neither the existence of the deficiencies nor the underlaying fraud was admitted.) Accordingly, as to these specific taxable years, summary judgment shall not be granted.

### Tax Years 1993 to 1997

The IRS asserted that for the years 1993 to the filing Simone's tax liabilities were nondischargeable pursuant to 11 USC § 523(a)(1)(A) which excepts from discharge any tax that falls within 11 USC § 507(a)(8). Pursuant to section 507(a)(8), taxes due within three years prior to the filing are nondischargeable. Simone's 1993 tax return, without any extensions, would have been due on April 15, 1994. Simone filed his petition of March 27, 1997. The tax liability for 1993 therefore falls within the prior three years of filing and therefore is nondischargeable.

Simone does not dispute the nondischargeability of taxes for these particular years. In his memorandum in support of his response to motion for summary judgment, Simone acknowledges and agrees that the taxes due for 1993 and subsequent years are not dischargeable.

Accordingly, summary judgment shall be granted in favor of the IRS for the tax years 1993 to 1997 and the tax liability for those years shall be held to be nondischargeable.

### Conclusion

For the reasons stated above, summary judgment shall be granted in favor of the Internal Revenue Service as to the tax liability for the years 1985, 1989 and 1993 through 1997 and the liability shall be nondischargeable. Summary judgment shall be denied as to the liability for the years 1984, 1986, 1987, and 1988. An appropriate order shall be granted and a

separate pretrial order shall issue as to the remaining portion of the adversary.