In re C. Cortland **HOOPER** and Carole H. Goode, Debtors.

Mary Ann **SCHIEBER**, an individual, Appellant,

v.

C. Cortland **HOOPER**, an individual, Appellee.

BAP No. SC–88–1554–PAsR.
Bankruptcy No. 85–01972–LM11.
Adv. No. C85–0809–H11.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 1989.

Decided April 10, 1990.

Seth T. Karpinski, Duckor & Spradling, San Diego, Cal., for appellant.

Eric Wolf, San Diego, Cal., for appellee.

Before PERRIS, ASHLAND and RUSSELL, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

Plaintiff filed an adversary proceeding alleging that a debt owed her by the debtor was nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6).[1] From a judgment determining the debt to be dischargeable, plaintiff brings this appeal, contending that the bankruptcy court erred in striking her demand for a jury trial and in granting a non-suit as to her claim under section 523(a)(4). We AFFIRM.

## FACTS

Defendant/appellee C. Cortland Hooper ("Hooper") is a real estate broker licensed in California. Hooper is also a shareholder and principal officer of Hooper, Goode Realty ("HGR"), a California corporation engaged in the real estate development business. HGR is the general partner of H.G.B., Ltd., a California limited partnership involved in the development of real property in San Diego known as the Old Town Financial Center ("the development project").

In 1980, plaintiff/appellant Mary Ann Schieber ("Schieber") loaned $100,000 to Hooper for the development project. Schieber, who was at that time going through a divorce from her husband of 30 years, contends that in exchange for the loan, Hooper agreed to assist and advise her in her dissolution and in other matters. Although the parties did not execute any documents evidencing the loan in 1980, Hooper gave Schieber a promissory note for the unpaid balance plus accrued interest in March of 1981. The note was renewed, through the execution of new notes, in September of 1982, 1983 and 1984.

The obligation was not paid and on November 26, 1984, HGR filed a Chapter 11 petition. On May 1, 1985, Hooper and Carol H. Goode ("Goode") filed a joint Chapter 11 petition.

Subsequently, Schieber filed the instant adversary proceeding against Hooper and Goode,[2] alleging that the debt arising from the above-described loan was nondischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4) and

---

**1.** All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

**2.** Although this appeal names Goode as an appellee, pursuant to a stipulation the action was dismissed with prejudice as to Goode and Schieber apparently seeks no relief against Goode by this appeal.

(a)(6) and demanding a jury trial. The bankruptcy court granted Hooper's motion to strike Schieber's demand for a jury trial, indicating that there is no right to a jury trial in a dischargeability proceeding.

The proceeding was tried on February 25 and March 4, 1988. Following the close of Schieber's case, the bankruptcy court granted Hooper's motion for involuntary dismissal as to the counts alleging nondischargeability under sections 523(a)(4) and (a)(6). Following completion of the trial, the bankruptcy court found in favor of Hooper on the section 523(a)(2) claim and entered a judgment determining the debt to be dischargeable. Schieber filed this timely appeal.

## ISSUES

1. Whether Schieber has a Seventh Amendment right to a jury trial in her adversary proceeding to determine the dischargeability of a debt.

2. Whether the bankruptcy court erred in granting Hooper's motion for involuntary dismissal as to Schieber's section 523(a)(4) claim.[3]

## STANDARD OF REVIEW

■ Entitlement to a jury trial is a question of law that is reviewed *de novo. Standard Oil Co. v. Arizona,* 738 F.2d 1021, 1022–23 (9th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 807 (1985). A dismissal pursuant to Fed.R. Civ.P. 41(b) is viewed as a judgment in defendant's favor following a trial to the court. *Great American Houseboat Co. v. United States,* 780 F.2d 741, 746 (9th Cir. 1986). In reviewing such a judgment, a bankruptcy court's findings of fact will not be reversed unless clearly erroneous, *see* Bankruptcy Rule 8013, and conclusions of law are reviewed *de novo. In re Lewis,* 79 B.R. 893, 895 (9th Cir. BAP 1987).

## DISCUSSION

1. *Whether Schieber has a Seventh Amendment right to a jury trial in her adversary proceeding to determine the dischargeability of a debt.*

■ Schieber contends that she has a right to a jury trial in her action to determine the dischargeability of a debt under the Seventh Amendment to the Constitution.[4] The Seventh Amendment preserves the right to trial by jury in "suits at common law." In *Granfinanciera, S.A. v. Nordberg,* — U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court defined the analysis to use in determining when the Seventh Amendment right to a jury trial attaches in a bankruptcy case. In holding that a party who had not filed a claim against the bankruptcy estate had a right to a jury trial in an action by the trustee to recover an allegedly fraudulent transfer of money, the Supreme Court set out a three step test based upon traditional Seventh Amendment law/equity analysis:

> The form of our analysis is familiar. 'First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.' *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.* at 421, 107 S.Ct. at 1837. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

109 S.Ct. at 2790.

The primary question, which is addressed by examining the nature of the claim and

---

**3.** In the court below, Schieber also alleged nondischargeability under sections 523(a)(2) and 523(a)(6). Although Schieber raised the court's refusal to grant relief under sections 523(a)(2) and 523(a)(6) in her statement of issues, she did not discuss those sections in her briefs before

this Panel. Therefore, any issues related to those sections are deemed to be abandoned.

**4.** Schieber does not argue that she had a statutory right to a jury trial in the bankruptcy court.

the relief requested under the first two prongs of the *Granfinanciera* test, is whether the proceeding at issue is legal or equitable in nature. Schieber contends that her claim is legal in nature because she seeks money damages for fraud, breach of fiduciary duty and willful and malicious conduct, which involve actions at law that were historically tried to a jury. Hooper contends that the proceeding essentially sought a declaration that the debt at issue was nondischargeable and that in that sense it was an equitable proceeding.

These opposing contentions illustrate the dual nature of a dischargeability proceeding and reveal the importance of characterizing precisely the nature of the proceeding. On the one hand a dischargeability proceeding can be a proceeding to establish the liability for and amount of a debt arising from, for example, fraud, breach of fiduciary duty or willful and malicious conduct. In this regard, the proceeding can often be legal in nature. The crux of a dischargeability proceeding, however, determines whether the debt at issue is excepted from the bankruptcy discharge. If, as in this case, it is determined that the debt, if any, is not excepted from discharge, the court need not reach questions of liability and amount.

The critical question, therefore, is whether a proceeding which addresses solely the issue of dischargeability, as opposed to questions of liability or amount, is legal or equitable under the test set out in *Granfinanciera*. Turning first to the historical component of the *Granfinanciera* test, although there may be support for the proposition that an action to recover money damages for fraud, breach of fiduciary duty, or willful and malicious conduct was the type of action that would have been brought in a

court of law in the courts of England prior to the merger of law and equity, Schieber cites no authority indicating that the issue of dischargeability would have been determined in a court of law. To the contrary, a bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity. *See* Countryman, *The New Dischargeability Law,* 45 Am.Bankr.L.J. 1, 36–39 (1971).

Moreover, the genesis of bankruptcy relief was in proceedings brought in English courts of equity. *See* 1 Norton *Bankruptcy Law and Practice* § 16.02 (1981). Issues surrounding a debtor's discharge and the dischargeability of certain debts are inextricably bound to and arise only in connection with bankruptcy relief because such issues concern whether the debtor will be granted the protection and benefits of bankruptcy. *See id.* This close and inextricable tie to the historically equitable bankruptcy process provides a further indication of the equitable roots of dischargeability issues.

An examination of the remedy sought also indicates that the dischargeability issue is equitable in nature. The ultimate relief sought is a determination that, as to a particular debt, the creditor is not bound by the injunctive effects of a discharge under section 524(a).

Because of the equitable nature of the remedy sought and the historically equitable roots of dischargeability issues, under the test of *Granfinanciera*,[5] Schieber is not entitled to a jury trial on the issue of dischargeability.[6] Although there may be a right to a jury trial on the underlying

---

**5.** Because we determine that Schieber is not entitled to a jury trial under the historical and nature of the remedy components of the *Granfinanciera* test, we need not determine the third component—whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

**6.** This conclusion is consistent with the overwhelming weight of authority which has deter-

mined, without significant analysis, that although there may be a right to a jury trial on the issues of liability and damages, the issue of dischargeability is an equitable one, for which there is no right to a jury trail. *See, e.g., In re Merrill,* 594 F.2d 1064 (5th Cir.1979); *In re Swope,* 466 F.2d 936 (7th Cir.1972) *cert. denied,* 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973); *In re Smith,* 84 B.R. 175 (Bankr. D. Ariz.1988).

issue of damages,[7] the bankruptcy court found the debt dischargeable and did not reach the damages question. Accordingly, there was no right to a jury trial on the issues addressed in the court below, and we determine that the bankruptcy court did not commit reversible error in striking Schieber's jury trial demand.

2. *Whether the bankruptcy court erred in granting Hooper's motion for involuntary dismissal as to Schieber's section 523(a)(4) claim.*

11 U.S.C. § 523(a)(4) provides that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Schieber contends that the requisite fiduciary relationship arose from Hooper's status as a real estate broker and from his conduct in advising her in investment and dissolution matters. She further contends that Hooper breached his fiduciary duties by deceiving her with regard to the viability of the development project and with regard to the security for her loan.

The "fiduciary capacity" requirement of this section has consistently been limited to technical or express trust relationships, *e.g. In re Cooper,* 30 B.R. 484, 489 (9th Cir. BAP 1982), and the broad general definition of a fiduciary relationship—one involving confidence, trust and good faith—is inapplicable in defining "fiduciary" in the dischargeability context. *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986). Although the concept of "fiduciary" under section 523(a)(4) is a narrowly defined matter of federal law, courts look to state law to determine when the requisite trust relationship exists. *Ragsdale,* 780 F.2d at 796. If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary within section 523(a)(4). *See e.g. Ragsdale,* 780 F.2d at 796–97.

Under California law, a real estate broker is a fiduciary who has "the same obligation of undivided service and loyalty that the law imposes on a trustee in favor of his beneficiary." *Ziswasser v. Cole & Cowan, Inc.,* 164 Cal.App.3d 417, 210 Cal.Rptr. 428, 429 (1985). These trust like obligations have been found to apply when the real estate broker or sales person acts as an investment counselor by soliciting lenders and brokering loans secured by an interest in real property. *Montoya v. McLeod,* 176 Cal.App.3d 57, 221 Cal.Rptr. 353 (1985).

The bankruptcy court found that there was not an express or formal trust as is required to establish a fiduciary relationship. The bankruptcy court noted that there was conflicting evidence as to whether Hooper acted as Schieber's advisor and representative in her personal and financial affairs and that there was evidence that Schieber employed others to represent her in such matters. *Id.*

■ We do not believe that the bankruptcy court committed clear error in this regard. Even if the requisite trust relationship can arise solely by virtue of a broker-client relationship, although there is evidence that Hooper acted as a real estate broker in assisting Schieber in the sale or purchase of real property, there is no evidence that Hooper acted as Schieber's real estate broker with respect to the transactions giving rise to the debt at issue. Rather, the evidence indicates that Hooper counseled Schieber with respect to certain investment decisions and induced Schieber to loan money to him or his companies. Hooper's actions in borrowing money from Schieber do not fall within the scope of the acts of a real estate broker as defined by Cal.Bus. & Prof.Code § 10131.

Apart from any possible fiduciary capacity arising from a real estate-broker relationship, there is no indication that the requisite express trust relationship existed. There is no evidence that Hooper ever held any money or documents in trust for Schieber. The mere fact that Schieber may have

---

7. *Compare In re Merrill,* 594 F.2d at 1068 (a party was entitled to a jury trial on issues of liability and damages) *with In re Schmid,* 54 B.R. 520, 522–23 (Bankr.E.D.Pa.1985) (a party is not entitled to a jury trial on such issues).

employed Hooper to counsel her with respect to investment matters is not sufficient to create the requisite fiduciary capacity under the narrow standard discussed above. This is especially true where, as in this case, there is substantial evidence in the record that Schieber conferred with and relied upon others to assist her in investment matters. On the basis of these factors and our review of the entire record on appeal, we conclude that the bankruptcy court did not commit clear error in finding that Schieber failed to establish a fiduciary relationship for purposes of section 523(a)(4).

### CONCLUSION

We determine that Schieber had no right to a jury trial on the issue of dischargeability and that the bankruptcy court did not err in granting Hooper's motion for involuntary dismissal as to Schieber's section 523(a)(4) claim. Accordingly, we AFFIRM the bankruptcy court's decision.