In re Jeanne Lamar **THRALL**, SSN 225–52–2388, Debtor.

**FIRST OMNI BANK, N.A., Plaintiff,**

v.

**Jeanne Lamar THRALL, Defendant.**

**Bankruptcy No. 95–19131 DEC. Adversary No. 95–1727 MSK.**

United States Bankruptcy Court, D. Colorado.

May 28, 1996.

---

Dale L. Fischer, Aurora, CO, for debtor.

Janice A. Steinle, Trustee, Littleton, CO.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR CLARIFICATION OR TO ALTER OR AMEND JUDGMENT

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion of First Omni Bank, N.A. (Bank) for Clarification or to Alter or Amend Judgment (Motion). Appearing for oral argument on May 14, 1996 was Paul G. Urtz of Stutz & Miller on behalf of First Omni Bank, N.A. In the Motion, the Bank seeks clarification or modification of the Order on Motion for Default Judgment and Judgment (collectively referred to as Judgment) entered in this matter. Having reviewed the Motion, the Bank's brief, and considered counsel's oral argument, the Court clarifies but declines to modify the Judgment.

### I. JURISDICTION

As to determination of dischargeability of a debt, this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), and this proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I).

### II. BACKGROUND

1. On September 6, 1995, Jeanne Lamar Thrall (Debtor) filed a voluntary petition for relief under Chapter 7. The Bank filed its Complaint to determine dischargeability under 11 U.S.C. § 523 on November 22, 1995.

2. The Complaint states two claims. Claim I alleges that the Debtor is indebted to the Bank on a credit card account which had a balance on the date of the bankruptcy filing of $5,477.23 (credit card debt) and that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). In specific, the Bank contends that the credit card debt was obtained through false pretenses, false representation, or actual fraud because at the time the charges were incurred the Debtor knew that she was unable to and did not intend to pay them. Claim II alleges the credit card

debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) because credit was extended in reliance upon the Debtor's false financial statement. The prayer in the Complaint requests that the Court determine that the credit card debt is nondischargeable and enter a money judgment in the amount of $5,477.23 plus interest, attorney fees, and costs.

3. No Answer was timely filed. On January 5, 1996, the Bank filed a verified Motion for Entry of Default Judgment (Default Motion) requesting entry of a nondischargeable money judgment in the amount of $6,122.23 (inclusive of attorney fees and costs), plus interest thereon at the legal rate.

4. Neither the Complaint nor the Default Motion specifies what portion of the credit card debt was "obtained by fraud" under § 523(a)(2)(A) or (B).

5. On January 16, 1996, this Court entered an Order on the Default Motion granting it, in part, and denying it, in part. The Order reads:

> Default judgment is hereby entered in favor of the Plaintiff and against the Defendant, Jeanne Lamar Thrall, such that the debt of Jeanne Lamar Thrall to First Omni Bank, N.A., in the amount of $6,122.23 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The Plaintiffs request that the Court award post-judgment interest is **DENIED.**

On the same date including the same language, the Court entered its written Judgment.

6. Thereafter, the Bank filed the instant Motion requesting that post-judgment interest be awarded pursuant to 28 U.S.C. § 1961(a).

### III. ANALYSIS

The Bank requests that the Court modify the Judgment to include an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a) which provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court". The Bank contends that a bankruptcy court is a unit of a district court pursuant to 28 U.S.C. § 151 and therefore it is authorized to award interest on its judgments.

Although the Bank's argument is brief and straightforward, it opens Pandora's box with regard to entry of money judgments on nondischargeable debts, especially when the request for judgment follows a debtor's default. The explicit issue raised in the Motion is whether the Judgment should include post-judgment interest, but the Motion raises a second, implicit issue as well. That is, whether a money judgment can be entered by a bankruptcy court on a debt determined nondischargeable under 11 U.S.C. § 523.

### A. Should the Judgment include an award of post-judgment interest?

The Bank is correct that 28 U.S.C. § 1961(a) applies to some judgments entered by bankruptcy courts. *Woolfson v. Doyle,* 180 F.Supp. 86 (S.D.N.Y.1960) (interest awarded on judgment costs ordered for meritless claims); *Langenkamp v. Moore (In re Republic Financial Corp.),* 75 B.R. 840 (Bankr.N.D.Okla.1987), *later proceeding,* 128 B.R. 793 (Bankr.N.D.Okla.1991) (interest awarded on claims under 11 U.S.C. §§ 547 and 550); *Gilbert v. Suburban Athletic Club (Matter of Dayton Circuit Courts No. 2),* 80 B.R. 434 (Bankr.S.D.Ohio 1987) (pre-judgment interest on 11 U.S.C. § 547(b) claim). However, judgments which do not involve a monetary award are not subject to 28 U.S.C. § 1961. Declaratory judgments determining rights in the bankruptcy process rather than a damage award are not money judgments. For example, interest under 28 U.S.C. § 1961 is not applicable to the allowance of attorney fees as an administrative expense in a bankruptcy case. *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1010–11 (4th Cir.1985).

No post-judgment interest is awardable because the Judgment is a declaratory rather than a money judgment. The Judgment simply determines that a debt is nondischargeable and quantifies it. *John Deere Co. v. Gerlach (In re Gerlach),* 897 F.2d 1048, 1052 (10th Cir.1990).

### B. Can a money judgment be entered by a bankruptcy court on a debt determined to be nondischargeable under 11 U.S.C. § 523?

The implied issue raised by the Motion and by this Court's entry of a declaratory judgment is whether a bankruptcy court can enter a money judgment on a nondischargeable debt. This issue is the subject of some debate and there is little guidance in this circuit.[1]

It is the practice of many, if not most, bankruptcy courts to enter money judgments against a debtor if a debt is determined to be nondischargeable. The practice undoubtedly stems from experience under the Bankruptcy Act. Section 17(c)(3) of the Act required a bankruptcy court not only to determine dischargeability of a debt, but also to enter judgment and make necessary orders for its enforcement. Section 17(c)(3) of the Act provided:

> After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof.

When the Bankruptcy Code was enacted, most anticipated that this same procedure would continue. *See Cope v. Cope (In re Cope),* 35 B.R. 287, 288 (Bankr.W.D.Mich. 1983). For most courts and creditors the practice of entering a money judgment on a nondischargeable debt is standard operating procedure. However, courts recently have expressed reservations as to whether a bankruptcy court can or should enter a money judgment on debts determined to be nondischargeable.

Those courts which conclude that a bankruptcy court may enter money judgments on nondischargeable debts do so largely based on past practice and interests of judicial economy. But with all due respect, these opinions do not analyze the language of the Code and Rules, the differences between the determination of discharge under the Act and the Code, the current jurisdictional grant to bankruptcy courts, or the interplay between the bankruptcy and state judicial processes. *See Longo v. McLaren (In re McLaren),* 3 F.3d 958, 965 (6th Cir.1993); *N.I.S. Corp. and Ozark Life Ins. Co. v. Hallahan (Matter of Hallahan),* 936 F.2d 1496, 1508 (7th Cir. 1991); *Citibank (South Dakota), N.A. v. Fisher (In re Fisher),* 186 B.R. 70, 71 (Bankr.E.D.Tex.1995); *Itano Farms, Inc. v. Currey (In re Currey),* 154 B.R. 977, 978–80 (Bankr.D.Idaho 1993); *Snyder v. Devitt (In re Devitt),* 126 B.R. 212, 215–16 (Bankr. D.Md.1991). These cases approve entry of a money judgment because quantification of a nondischargeable debt is integral to the determination of dischargeability and bankruptcy courts, as courts of equity, should resolve all of the issues in the dischargeability controversy. The foundation of this reasoning is the well-known maxim that once equitable jurisdiction has been properly invoked it will proceed to render a full and complete disposition of the controversy. *Porter v. Warner Holding Co.,* 328 U.S. 395, 399, 66 S.Ct. 1086, 1089–90, 90 L.Ed. 1332 (1946); *Alexander v. Hillman,* 296 U.S. 222, 242, 56 S.Ct. 204, 211, 80 L.Ed. 192 (1935). The maxim is bolstered by the policy favoring conservation of judicial resources by avoiding duplication of effort and multiplicity of suits. When addressed, the jurisdictional basis for the money judgment is the bankruptcy court's core equitable authority to determine dischargeability. *Devitt,* 126 B.R. at 216.

Courts which have declined to enter money judgments on nondischargeable debts reason either that entry of a money judgment on a nondischargeable debt falls outside a bankruptcy court's core jurisdiction or that entry of a money judgment is an award of damages which may give rise to a Seventh Amendment right to a jury trial. *See Schieber v.*

---

1. The only Tenth Circuit opinion found by this Court which addresses the issue is unpublished. *Samuel v. Edd,* 961 F.2d 220, No. 91–6184, 1992 WL 86698 (10th Cir.1992). In *Samuel,* the court did not overturn a money judgment entered by a bankruptcy court on default. The bankruptcy judgment was in the identical amount as a judgment previously entered by a state court.

*Hooper (In re Hooper)*, 112 B.R. 1009, 1012–13 (9th Cir. BAP 1990); *Barrows v. Illinois Student Assistance Comm'n (In re Barrows)*, 182 B.R. 640, 652–53 (Bankr.D.N.H.1994); *Manufacturers Hanover Trust Co. v. Marlar (In re Marlar)*, 142 B.R. 304, 307 (Bankr. E.D.Ark.1992); *Estate of Eckel v. Narciso (In re Narciso)*, 146 B.R. 792, 793 (Bankr. E.D.Ark.1992); *see also* Countryman, THE NEW DISCHARGEABILITY LAW, 45 Am.Bankr.L.J. 1, 36–39 (1971).

One cannot dispute the policy objectives of conserving judicial resources and fully resolving disputes. But to conclude that a bankruptcy court can enter a money judgment on a nondischargeable debt, this Court is compelled to consider the applicable provisions of the Code and Federal Rules of Bankruptcy Procedure, the scope of the dischargeability inquiry, the limited jurisdiction of bankruptcy courts and the practical impact of a money judgment upon a debtor and creditor following bankruptcy.

### 1. The Code and Rules do not authorize entry of a money judgment on a nondischargeable debt.

Under the Code, exceptions to discharge of individual debts are generally governed by the provisions of 11 U.S.C. § 523.[2] Section 523 is implemented by Bankruptcy Rules 4007 and 7001(6). Contrary to the provisions of § 17(c)(3) of the Act, neither § 523 nor the rules for its implementation expressly authorize a bankruptcy court to enter a money judgment. Section 523 speaks only to determination that a debt be excepted from discharge.[3] Rule 4007 authorizes creditors to file "a complaint to obtain a determination of the dischargeability of any debt", and Rule 7001(6) requires an adversary proceeding to "determine the dischargeability of a debt".

The language of § 523 and the rules implementing it stand in stark contrast to the Act's directives in § 17(c). Congress empowered the bankruptcy court to determine the dischargeability of a debt but did not include authorization to "determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof".

■ Section 105(a) of the Code empowers bankruptcy courts to issue any order, process or judgment which is necessary or appropriate to carry out the provisions of Title 11. Although this provision gives bankruptcy courts enforcement powers, it does not extend a bankruptcy court's authority beyond the purposes and functions of the Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) (a court may exercise its equitable powers only as a means to fulfill some specific Code provision); *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir.1993) (a court may not employ its equitable powers to achieve a result not contemplated by the Code). Section 105 simply returns the focus to the meaning of "determination of dischargeability of a debt".

■ The general rule of statutory construction is that an unambiguous statute means what it says and only what it says. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (if the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive). Congress is presumed to have included provisions expressing its intent. The specific directive in § 523(d) to "enter a judgment in favor of the debtor" under certain circum-

---

**2.** Under § 727(b), all debts that arise before the order for relief are discharged except as provided under § 523. Discharge in a Chapter 11 case is governed by § 1141(d)(2) which incorporates the provisions of § 523. In Chapter 12 and 13 cases, the exceptions of § 523 are further limited by the provisions of 11 U.S.C. §§ 1228 and 1328, respectively.

**3.** Section 523 repeatedly refers to debts "excepted from discharge". Subsection (c)(1) provides that "... the debtor shall be discharged from a

debt of a kind specified in paragraph (2), (4), (6) or (15) ... unless ... the court determines such debt to be excepted from discharge...." Similarly subsection (d) allows entry of a "judgment in favor of the debtor" for costs and attorneys fees where a creditor's request for a "determination of dischargeability" is not substantially justified. No mention is made in § 523 of entering a judgment in favor of a creditor for the amount of the nondischargeable debt or for an award of costs or attorneys fees.

stances suggests that Congress considered whether and when money judgments should be entered in dischargeability proceedings. Because Congress did not specifically direct bankruptcy courts to render judgments on nondischargeable debts and enforce them, as it had in § 17(c) of the Act, it appears that it did not desire them to do so. *See e.g. Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991) (where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion).

This Court has found nothing in the legislative history which would indicate Congress' intent to continue the practice of entering money judgments on nondischargeable debts. Indeed, fundamental changes in bankruptcy policy reflected in the Code help explain why the language of § 17(c) of the Act was not included in the Code or Rules.

**2. Under the Code, determination of dischargeability is a limited function. It does not resolve the entire controversy between a debtor and a creditor within the bankruptcy process and does not necessarily duplicate the cause of action brought outside of bankruptcy.**

There is a fundamental difference between the determination of dischargeability under the Act and the Code. Under the Act, discharge and claim allowance in the liquidation chapters were limited to "provable" debts. Provable debts were limited to the categories specified in § 63.[4] To be provable, a debt had to be of a specified type and be enforceable under non-bankruptcy law. *In re Scher,* 21 F.Supp. 441, 441 (E.D.N.Y.1937); *In re*

*Talbot,* 110 F. 924, 925 (D.Mass.1901). Discharge, exceptions to discharge and allowance were limited to provable debts.

By conditioning both discharge and allowance upon provability, the Act allowed creditors to use the dischargeability proceeding for "one stop shopping". In a discharge proceeding, the court determined whether the debt was provable, that is whether it fell within the § 63 categories and whether it was enforceable outside of bankruptcy. Then it determined whether it was excepted from discharge. If the debt was provable, it was both dischargeable and allowable.[5] If the debt was provable but excepted from discharge, the creditor obtained a money judgment on the debt which bore interest under 28 U.S.C. § 1961. Because the court determined the enforceability of the debt under non-bankruptcy law as part of the dischargeability proceeding, it was authorized to enter a money judgment.

A determination of dischargeability under the Code is not as comprehensive as it was under the Act. Keeping the analogy consistent, a dischargeability proceeding under the Code is not one stop shopping, but instead a stop for milk at the convenience store on the way home from work. The excursion may be essential but is not intended to comprehensively cover the shopping list.

■ The Code abolished the concept of provability thereby broadening the scope of debts affected by a bankruptcy and eliminating the implicit requirement that debts be enforceable in order to be discharged. Debts are dischargeable regardless of whether they are disputed, contingent, unmatured or subject to offset. By eliminating the concept of provability and expanding the definition of a claim, Congress intended that all pre-petition debts other than those specifically excepted be dischargeable.[6]

---

**4.** (1) a fixed liability which was *absolutely owing,* as evidenced by a judgment or instrument in writing; (2) costs taxable against a bankrupt in a cause of action which the trustee declined to pursue; (3) a claim for taxable costs in an action by a creditor to recover a *probable* debt; (4) an open account, or express or implied contract; (5) otherwise provable debts which were reduced to judgment after the filing of the case; (6) a worker's compensation award; (7) the right to recover damages in a negligence action; (8) contin-

gent debts and contractual liabilities; and (9) claims for anticipatory breach of contract. (Emphasis added.)

**5.** Subject to the proof and procedural requirements of § 57.

**6.** According to legislative history:

[U]nder the liquidation chapters of the Bankruptcy Act, certain creditors are not permitted

In abolishing the concept of provability, Congress also separated the determination of dischargeability of a debt from the allowance of a claim. The Code gives creditors two separate and distinct causes of action. Neither determination affects the other.

One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions. *Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 495 (Bankr.S.D.Ohio 1993) (quoting *Brockenbrough v. Taylor (In re Taylor)*, 54 B.R. 515, 517–18 (Bankr.E.D.Va. 1985)).

The action to determine the debt for bankruptcy administration purposes is pursued in the claim allowance process (§ 502 and Fed. R.Bankr.P. 3001–3008). As to claim allowance, Congress included a requirement that a claim be enforceable in § 502(b)(1), but did not expressly authorize entry of a money judgment on the claim. Dischargeability is separately governed by §§ 523, 1141, 1228 and 1328 and Fed.R.Bankr.P. 4007 and 7001(6). Unlike claim allowance, enforceability of a debt under non-bankruptcy law is not a requirement for discharge or an exception to discharge.

The difference in the importance of determining the enforceability of a debt in claim allowance and discharge can be attributed, in part, to the different functions of each process. A claim can be premised upon alternate and various theories and its enforceability may be affected by various defenses. Equal treatment of creditors in distribution of estate assets necessarily requires that all creditors receiving dividends have enforceable rights against the debtor and that no creditor receives a greater share than it would be entitled to receive absent a bankruptcy. But discharge of a debt no longer depends upon whether the debt is enforceable outside of bankruptcy. Indeed, if discharge required determination of the en-

forceability of every debt, simple Chapter 7 cases would last for years.

The issue of whether a debt is enforceable arises, however, when nondischargeability is asserted. Although § 523 contains no requirement that the court determine whether a debt is enforceable outside of bankruptcy, it excepts from discharge only debts of particular type and requires that the nondischargeable debt be quantified. It seems illogical to determine that there exists a debt of a particular kind and specified amount without determining enforceability. But it is a mistake to confuse application of the narrow exceptions to discharge under § 523 with a comprehensive determination of the enforceability of the debt on all theories and in light of all defenses which could be asserted outside of bankruptcy. Determination of whether a debt is excepted from discharge addresses only the provisions of § 523 and as a consequence is rarely a substitute for determination of the enforceability of the debt under non-bankruptcy law.

The 16 exceptions contained in § 523 are explicit, narrowly construed and determined by application of federal rather than state law. The exceptions often do not mirror or include all claims assertable outside of bankruptcy. For example under § 523(a)(4), the broad state law definition of fiduciary is inapplicable; under federal law a fiduciary relationship is limited to that created by express, technical or statutory trust. *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir.1976). Likewise, under § 523(a)(5), whether an obligation is in the nature of alimony or support is a matter of federal law regardless of how the obligation has been labeled or characterized by a state court. *Sylvester v. Sylvester*, 865 F.2d 1164, 1165–66 (10th Cir.1989).

The parties, defenses, and standard of proof are not necessarily the same in § 523 proceedings as they would be in actions pursued outside of bankruptcy. In the

---

to share in the estate because of the non-provable nature of their claims, and the debtor is not discharged from those claims. Thus, relief for the debtor is incomplete, and those creditors are not given an opportunity to collect in the case on their claims. The proposed

law will permit a complete settlement of the affairs of a bankrupt debtor, and a complete discharge and fresh start. H.R.Rep. No. 595, 95th Cong. 1st Sess. 180–81 (1977) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5963, 6141.

Tenth Circuit, determination of dischargeability and the underlying state law claims may have different statutes of limitation. *RTC v. McKendry (In re McKendry)*, 40 F.3d 331 (10th Cir.1994), *reh'g denied* (Dec. 20, 1994).[7] Affirmative defenses which could be asserted outside of bankruptcy such as statute of limitations, comparative negligence, failure to mitigate damages, laches, waiver, and offset are irrelevant to the determination of dischargeability. *See e.g., Chisholm v. Colton (In re Colton)*, 108 B.R. 605, 606 (Bankr.N.D.Ohio 1989); *Roach v. Edge (In re Edge)*, 60 B.R. 690, 699 (Bankr. M.D.Tenn.1986). Counterclaims which could offset a debtor's liability are rarely asserted because, unless abandoned, they belong to the estate rather than to a debtor. Dischargeability proceedings involve only the debtor and creditor, and ordinarily do not resolve the joint or several liability of co-debtors, guarantors, or joint tortfeasors. Ultimately, the standard of proof may be different on a § 523 claim than on identical claims asserted outside of bankruptcy. For example, under § 523 the standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In contrast, common or state law claims for fraud or punitive damages often require satisfaction of a higher standard.

The quantification of a nondischargeable debt is not necessarily the same as the damages which could be awarded outside of bankruptcy because the measure of the debt is limited by the § 523 exceptions. For example, outside of bankruptcy a credit card debt would likely be pursued on a breach of contract claim, and the damages would include interest and attorney fees in accordance with the contract. Under § 523, however, there is no claim for breach of contract, so a creditor asserts that the same debt was incurred by fraud under § 523(a)(2)(A). With regard to claims brought under § 523(a)(2)(A), state fraud law may be helpful in defining the exception, but it does not measure the nondischargeable debt. *Gerlach*, 897 F.2d at 1051–52. Because the measure of the nondischargeable debt under § 523(a)(2)(A) is limited to that "obtained by fraud", interest, attorney fees, punitive and treble damages are not included. *In re Levy*, 951 F.2d 196, 198 (9th Cir.1991); *Medley v. Owen (In re Owen)*, 181 B.R. 288, 291 (Bankr.W.D.Va.1995); *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 998–99 (Bankr.M.D.N.C.1994); *In re Sciscoe*, 164 B.R. 86, 89 (Bankr.S.D.Ind.1993). The measure of the debt, like its existence, is determined in accordance with § 523, rather than non-bankruptcy law.

---

**7.** In *McKendry*, the Tenth Circuit considered whether the state three-year statute of limitations for fraud claims or the sixty-day period in which to file dischargeability claims under Fed. R.Bankr.P. 4007(c) was applicable to a fraud claim which had not been timely asserted prior to the bankruptcy. Before the bankruptcy, the creditor obtained a deficiency judgment on a note but asserted no claim for fraud. The bankruptcy court held that because the state statute of limitations had expired without the assertion of the fraud claim, the dischargeability proceeding was barred. The district court affirmed. Relying upon *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Tenth Circuit reversed, holding that the pre-petition state court judgment on the note was not *res judicata* as to the dischargeability determination, and that the state statute of limitations did not bar assertion of nondischargeability under § 523. In effect, it ruled that dischargeability is a federal law claim which has no counterpart under state law.

This reasoning is questioned in *In re Gergely*, 186 B.R. 951 (9th Cir. BAP 1995), in which the Ninth Circuit Bankruptcy Appellate Panel held that in order to be nondischargeable, a debt must be enforceable at state law. The *Gergely* reasoning fits the old practice under the Act of conditioning dischargeability upon provability. But under the Code, the two concepts are unrelated.

One wonders why a creditor would pursue a dischargeability determination under § 523 if the debt was unenforceable under state law. The answer undoubtedly is that the creditor seeks a second bite at the apple. It is not clear in *McKendry* whether the creditor sought a new money judgment on a new theory or simply a determination that the debt embodied in the old judgment was excepted from discharge on federal law grounds. *McKendry* holds that a creditor can pursue a theory of nondischargeability which is the same as or resembles a state law claim which was not timely adjudicated prior to the bankruptcy. But it does not address the problem of the *de facto* extension of the state statute of limitations which occurs if a second money judgment is entered on a claim which has been time barred under state law. The problem of the resurrection of a time-barred claim can be avoided if the nondischargeability determination is limited to a declaratory judgment applying federal law to the previously adjudicated debt.

Finally, a determination of dischargeability of a debt is meaningful only in the context of a discharge. If a case is dismissed prior to entry of discharge or the discharge is denied or revoked, a judgment as to dischargeability of a debt becomes moot unless a subsequent bankruptcy is filed. In addition, because the scope of discharge in a Chapter 13 case is broader than in a Chapter 7 case, a determination that a debt is nondischargeable under § 523(a)(2), (4), or (6) becomes moot if a discharge is entered under § 1328.

■ Determination of dischargeability of a debt is a limited function under the Code. It only defines the scope of discharge and does not substitute for a full and complete determination of all claims and defenses which can be asserted under non-bankruptcy law.

**3. The current jurisdictional grant does not authorize bankruptcy courts to enter final money judgments as part of the dischargeability determination.**

Entry of a money judgment is, in essence, an award of damages on a pre-petition debt. A pre-petition damage claim does not arise under bankruptcy law and impacts the bankruptcy process only if allowed as part of the claim allowance process. Thus, it is difficult to shoehorn a money judgment into a core determination of dischargeability.

■ Federal courts inherently have limited jurisdiction and possess only the powers authorized by the United States Constitution and federal statutes. These powers may not be expanded by judicial decree or consent of the parties. *Becenti v. Vigil,* 902 F.2d 777, 780 (10th Cir.1990); *Trigg v. U.S. Dept. of Interior (In re Trigg),* 630 F.2d 1370, 1372 (10th Cir.1980). A claim is presumed to lie outside the limited jurisdiction of federal courts; the burden of establishing the contrary rests upon the party asserting the existence of jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

■ Bankruptcy courts have only the jurisdiction and powers expressly, or by nec-essary implication, granted by Congress. *Gardner v. U.S. (In re Gardner),* 913 F.2d 1515, 1517 (10th Cir.1990). A bankruptcy court's jurisdiction is referred by the federal district court. The referred jurisdiction is limited by 28 U.S.C. § 1334 to four matters: (1) cases under Title 11 or matters involving property of a debtor or estate; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11; and (4) proceedings related to a case under Title 11. 28 U.S.C. § 1334(a), (b), and (e); *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264 (3rd Cir.1991). Although a bankruptcy court has original and exclusive jurisdiction over bankruptcy cases, property of the estate and all property of the debtor as of the commencement of the case, its jurisdiction in civil proceedings is original but not exclusive.

■ In the Tenth Circuit, the authority of the bankruptcy court to finally resolve disputes is narrowly construed. The Tenth Circuit characterizes § 1334(b) jurisdiction as being of two types, core and non-core. A core proceeding involves a claim which has no existence outside of bankruptcy or cannot proceed in another court. *Gardner,* 913 F.2d at 1518. A claim is not core simply because it falls within the wording of § 157(b)(2); the claim must also satisfy the mandate of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *First Nat'l Bank of Westminster v. Rarick (In re Rarick),* 132 B.R. 47, 50–51 (D.Colo.1991). Claims which, in the absence of the bankruptcy petition, could have been brought in a district court or state court are, at most, related to the bankruptcy case. *Gardner,* 913 F.2d at 1518.

■ In order to be related to a bankruptcy case, a claim must fall within the test of *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984). Under *Pacor,* a claim is related to a bankruptcy case if its outcome could conceivably have any effect on the estate being administered. If the outcome could alter a debtor's rights, liabilities, options or freedom of action in any way, *thereby impacting* the handling and administration of the bankruptcy estate, the bankruptcy court has jurisdic-

tion over the claim as a related, non-core matter. *Gardner*, 913 F.2d at 1518.[8]

Within these parameters, awarding damages on a pre-petition debt cannot be considered a core matter. An award of damages does not fall within the express language of § 157(b)(2)(I) "determinations as to the dischargeability of particular debts". It might arguably fit within the catch-all provision "all proceedings affecting the adjustment of the debtor/creditor relationship". 28 U.S.C. § 157(b)(2)(O). But determining damages does not satisfy the test for a core matter under either *Gardner* or *Marathon*. The damage claim does not arise under the Code and it could be brought in a court other than a bankruptcy court. It is simply part of a pre-petition claim requiring the adjudication of state created private rights. *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871–72.

A claim for damages as part of the determination of dischargeability does not even qualify as a related matter. An award of damages in favor of the creditor and against the debtor has no effect on the handling of the estate or its administration. The judgment is significant only after the bankruptcy process is concluded. The damage claim impacts the bankruptcy process only to the extent it is allowed under § 502.[9]

There also exists a hidden danger in determining a claim for damages as part of the determination of dischargeability. Determination of dischargeability is an equitable process in which there is no right to a jury trial. *Hallahan*, 936 F.2d at 1505–06; *McLaren*, 3 F.3d at 960–61; *Hooper*, 112 B.R. at 1012; *Boatmen's Bank of Columbia v. Johnson (In re Johnson)*, 110 B.R. 433, 434 (Bankr.W.D.Mo.1990); *Waker v. Brown (In re Brown)*, 103 B.R. 734 (Bankr.D.Md. 1989). In contrast, a claim for damages, especially if based upon pre-petition fraud, breach of fiduciary duty, or willful and malicious conduct (§ 523(a)(2), (4) and (6)), is most often a legal claim to which parties may have a constitutional right to a jury trial.[10] This Court is persuaded that the Ninth Circuit Bankruptcy Appellate Panel in *Hooper* correctly reasoned that as to the issue of

---

8. Some bankruptcy courts also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 which authorizes district courts to determine state law claims where there is a close logical and factual nexus between the state law claim and the federal claim. *See e.g. Hawkins v. Eads (In re Eads)*, 135 B.R. 387 (Bankr.E.D.Cal.1991). Recently, the Fifth Circuit Court of Appeals determined that supplemental jurisdiction granted to Article III courts under 28 U.S.C. § 1337 is not applicable to bankruptcy courts. *Walker v. Cadle Company (Matter of Walker)*, 51 F.3d 562, 571 (5th Cir.1995). The *Walker* reasoning has since been adopted in *Halvajian v. Bank of New York, N.A.*, 191 B.R. 56 (D.N.J.1995). Although the Tenth Circuit has not directly addressed the issue, its restrictive interpretation of bankruptcy court jurisdiction is consistent with the conclusion in *Walker*.

> Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive "relate to" and "arising in" jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous. Thus it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants. *Walker*, 51 F.3d at 573 (citations omitted).

9. Treatment of a damage claim as a non-core, related matter is problematic and destroys the judicial economy which entry of a money judgment is designed to accomplish. Absent consent of the parties under 28 U.S.C. § 157(c)(2), a bankruptcy court is required to submit findings and recommendations on related claims to an Article III court for *de novo* review. Although parties in a dischargeability proceeding might consent to have the bankruptcy court enter a final money judgment, in a default context such as this, there is neither express consent nor conduct of a debtor which can be construed as consent to the bankruptcy court's final determination of damages. Submission of findings and a recommendation to the district court effectively bifurcates the award of damages from the declaration of dischargeability and involves two courts.

10. Under the Act, the right to a jury trial was facilitated by bifurcating the determination of dischargeability and damages. *Matter of Merrill*, 594 F.2d 1064, 1068 (5th Cir.1979) (once a bankruptcy court determined that the debt was nondischargeable, appellant was entitled to a jury trial on the issue of liability and amount); *In re Swope*, 466 F.2d 936 (7th Cir.1972), *cert. denied*, 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973) (determined under the Act, the court suggests in *dicta* that a jury trial right may exist for factual issues subsidiary to the question of dischargeability).

discbargeability, alone, there is no right to a jury trial, but there may be a right to a jury trial on the issue of damages.

On the one hand a dischargeability proceeding can be a proceeding to establish the liability for and amount of a debt arising from, for example, fraud, breach of fiduciary duty or willful and malicious conduct. In this regard, the proceeding can often be legal in nature. The crux of a dischargeability proceeding, however, determines whether the debt at issue is excepted from the bankruptcy discharge. If, as in this case, it is determined that the debt, if any, is not excepted from discharge, the court need not reach questions of liability and amount.

The critical question, therefore, is whether a proceeding which addresses solely the issue of dischargeability, as opposed to questions of liability or amount, is legal or equitable under the test set out in *Granfinanciera* [*S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26]. Turning first to the historical component of the *Granfinanciera* test, although there may be support for the proposition that an action to recover money damages for fraud, breach of fiduciary duty, or willful and malicious conduct was the type of action that would have been brought in a court of law in the courts of England prior to the merger of law and equity, Schieber cites no authority indicating that the issue of dischargeability would have been determined in a court of law. To the contrary, a bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity. *See* Countryman, THE NEW DISCHARGEABILITY LAW, 45 Am.Bankr.L.J. 1, 36–39 (1971). Moreover, the genesis of bankruptcy relief was in proceedings brought in English courts of equity. See Norton, BANKRUPTCY LAW AND PRACTICE § 16.02 (1981). Issues surrounding a debtor's discharge and the dischargeability of certain debts are inextricably bound to and arise only in connection with bankruptcy relief because such issues concern whether the debtor will be granted the protection and benefits of bankruptcy. *See Id.* This close and inextricable tie to the historically equitable bankruptcy process provides a further indication of the equitable roots of dischargeability issues.

An examination of the remedy sought also indicates that the dischargeability issue is equitable in nature. The ultimate relief sought is a determination that, as to a particular debt, the creditor is not bound by the injunctive effects of a discharge under section 524(a).

Because of the equitable nature of the remedy sought and the historically equitable roots of dischargeability issues, under the test of *Granfinanciera,* Schieber is not entitled to a jury trial on the issue of dischargeability. Although there may be a right to a jury trial on the underlying issue of damages, the bankruptcy court found the debt dischargeable and did not reach the damages question. Accordingly, there was no right to a jury trial on the issues addressed in the court below, and we determine that the bankruptcy court did not commit reversible error in striking Schieber's jury demand. *Hooper,* 112 B.R. at 1012–13.

Finally, awarding damages under core, equitable authority potentially creates an impermissible distinction between the damages awarded under § 523(a)(2), (4), (6), and (15) and those awarded under the other 12 exceptions to discharge. Dischargeability determinations under § 523(a)(2), (4), (6), and (15) must be made by a bankruptcy court, while others can be pursued in courts with concurrent jurisdiction. If a jury trial on damages is precluded through the exercise of the bankruptcy court's core equitable powers, then the parties are compelled to waive their right to a jury trial for determination of damages under § 523(a)(2), (4), (6) and (15), but not under the other provisions of § 523.

The thorny issues of jurisdiction, finality of determination and right to jury trial can be best avoided by adhering to the literal language of the Code, Rules and the jurisdictional grant in 28 U.S.C. § 157(b)(2)(I). All refer to determination of dischargeability

which is only a declaratory judgment as to whether a debt of a specified amount is excepted from discharge. The declaratory determination is core, equitable, and requires no jury trial.

4. **In some scenarios, the practical effect of entering a money judgment may be beneficial to creditors and the debtor. In others, entry of a money judgment creates rather than avoids multiplicity of suits, inconsistency of result and unnecessary consumption of judicial resources.**

Putting aside past practice, the primary rationale for entering a money judgment on a nondischargeable debt is the belief that it avoids unnecessary consumption of judicial resources and grants the parties, especially the creditor, complete relief:

> Requiring the empaneling of a jury in bankruptcy court in the midst of the dischargeability proceedings, or perhaps referring the matter back to district court for a jury trial there, creates a cumbersome process. More importantly, however, allowing the bankruptcy judge to settle both the dischargeability of the debt and the amount of the money judgment accords with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief. *Hallahan*, 936 F.2d at 1508 (citation omitted).

It is only natural that having carefully considered evidence presented, a judge desires to end the dispute with a comprehensive order. But as with an iceberg, the size and nature of a legal controversy depends on one's viewpoint. From a bankruptcy perspective, the only issues of import are those arising under § 523, and the only parties to the dispute are the debtor and the creditor. But from the perspective of either the creditor or the debtor the scope of the controversy may well exceed § 523 issues and involve other parties.

There is little doubt that where the claim and defenses asserted under § 523 match the issues, rights and remedies assertable outside of bankruptcy, a single determination of all issues by the bankruptcy court aids both creditor and debtor. In such a case, entry of a money judgment on a nondischargeable debt saves both parties the time and expense of litigation after the bankruptcy. But when the issues under § 523 do not precisely mirror those existing outside of bankruptcy, ultimate and complete resolution of the controversy does not occur in the dischargeability proceeding. A money judgment by a bankruptcy court may be duplicative of or inconsistent with determination of the same debt under non-bankruptcy law. Entry of a money judgment may require further legal action and impose additional burden and expense on the parties. This can occur in several scenarios.

When the § 523 proceeding does not mirror the action outside of bankruptcy, entry of a money judgment may cause federal law to override substantive rights created by state law. For example, if the standard of proof for a claim asserted outside of bankruptcy is greater than a preponderance of the evidence, entry of a money judgment in a § 523 proceeding permits enforcement of a debt which may be unenforceable under state law.

When a money judgment has been entered prior to the bankruptcy filing, a determination of dischargeability of the debt does not require the entry of a second money judgment, but some bankruptcy courts nevertheless enter one. *See e.g. Samuel v. Edd*, supra, n. 1; *Kosac v. Clark (In re Clark)*, 179 B.R. 898 (Bankr.D.Ariz.1995). This results in two money judgments arising from the same debt. The two judgments have different dates, are potentially in different amounts, and potentially bear different rates of interest. The discharge injunction of § 524(a)(1) voids judgments for discharged debts, but not for debts determined to be nondischargeable. Upon which judgment does the creditor collect? Which judgment does the debtor satisfy? These questions are resolvable, but may require additional legal efforts by the debtor or creditor after the dischargeability proceeding is concluded.

Problems may also arise if there are claims which would be asserted against third parties outside of bankruptcy, but which are irrelevant to determination of dischargeability.

For example, either a creditor or debtor might seek recovery from co-obligors. A subsequent judgment may fix the liability of joint obligors upon a theory not assertable under § 523 or in an amount different than the bankruptcy court's money judgment. Satisfaction of the non-bankruptcy judgment by joint obligors will not automatically satisfy the bankruptcy judgment. Again, a debtor or creditor must take additional action to harmonize the judgment of the bankruptcy court with that of another court.

If no discharge is entered, the discharge is revoked, or the case is converted to Chapter 13 and the nondischargeable debt becomes dischargeable, a § 523 determination of non-dischargeability becomes moot, unless a subsequent bankruptcy is filed. Under these circumstances, a declaratory judgment poses no inconvenience to a debtor, but a money judgment may. The money judgment is recorded in the federal registry, bears interest from the date of its entry and is subject to collection under Fed.R.Bankr.P. 7069 (which incorporates Fed.R.Civ.P. 69) until satisfied or set aside pursuant to Fed.R.Bankr.P. 9024.

In short, due to the limited scope of a § 523 proceeding, a bankruptcy court can completely resolve the issues between a debtor and creditor only if the non-bankruptcy claims and defenses are identical to those asserted under § 523, there are no third parties against whom claims might be asserted, and a discharge other than under Chapter 13 is entered. These factors are often not known to and are certainly not controllable by the bankruptcy court. For example, conversion to Chapter 13 often does not occur until after the § 523 proceeding has been concluded. Thus, with the laudable intent of fully and completely resolving the claims between a debtor and a creditor by entering a money judgment, a bankruptcy court may actually complicate their resolution.

The Bank persuasively argues that the above scenarios are rare and can be addressed by creditors and debtors, as needed. The current system of routinely entering money judgments on nondischargeable debts is predictable and saves creditors a trip to state court after the bankruptcy. In short, the Bank argues that practicality and tradition outweigh any gaps Congress inadvertently left in the Code, Rules and jurisdictional grant to bankruptcy courts.

This Court shares the Bank's commitment to a sensible, pragmatic and predictable application of the law. But this Court must implement the law written by Congress, rather than tradition or a personal desire to conclude the dispute. This Court finds nothing in the Code, Rules, legislative history or jurisdictional grant that demonstrates a congressional intent that bankruptcy courts enter money judgments on nondischargeable debts. Like all other courts, this Court is limited by Congress' policy choices as reflected in the Code. As the United States Supreme Court recently reminded:

> [T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule. *In re Ahlswede*, 516 F.2d 784, 787 (9th Cir.), *cert. denied sub nom. Stebbens [Stebbins] v. Crocker Citizens Nat. Bank*, 423 U.S. 913 [96 S.Ct. 218, 46 L.Ed.2d 142] (1975), as quoted in *United States v. Noland*, —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

To continue past practice impermissibly enlarges the authority granted to this Court, ignores the special, limited role of this Court in the federal system and vis-a-vis the state legal system, and potentially deprives litigants of a full and fair opportunity to have the enforceability of their claims and defenses comprehensively determined.

Restricting determination of nondischargeability to a declaratory judgment may require additional litigation, but it preserves the parties' rights to a comprehensive determination of all claims and defenses arising from a given transaction or circumstance. The effect of beginning in the bankruptcy court and then proceeding to state court for entry of a money judgment is no different than obtaining a judgment in state court followed by a determination of dischargeability in bankruptcy. A creditor and debtor may settle the matter after the § 523 determination. Or consistent with § 524 and

§ 108(c), a creditor can utilize the principles of collateral estoppel or *res judicata* to obtain a money judgment from a court of broader jurisdiction after the bankruptcy. Such court would engage in the same process as do bankruptcy courts when considering the collateral estoppel or *res judicata* effect of pre-bankruptcy judgments. The declaration and quantification of the nondischargeable debt would set the outside boundary of a debtor's post-discharge liability.

## IV. CONCLUSION

Entry of a declaratory judgment, rather than a money judgment, is consistent with the Code, Rules, and the bankruptcy court's limited jurisdiction. In addition, it preserves the debtors' and creditors' ability to obtain a comprehensive and complete determination of all claims and defenses. Absent evidence of Congress' intent to the contrary, this Court declines to enter a money judgment on the debt previously declared nondischargeable.

SO ORDERED.